# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNETTE M. PETRUSKA, | ) | |
|     Plaintiff | ) | |
|     v. | ) | Civil Action No. 2004-80 Erie |
| GANNON UNIVERSITY | ) | |
|     and | ) | |
| THE BOARD OF TRUSTEES | ) | |
| OF GANNON UNIVERSITY | ) | |
|     and | ) | |
| WILLIAM I. ALFORD II, ROBERT H. | ) | |
| ALLSHOUSE, JOSEPH F. ALLISON, | ) | |
| REV. MICHAEL P. ALLISON, JAMES | ) | |
| A. BALDAUF, L. SCOTT BARNARD, | ) | |
| GEORGE J. BEHRINGER, ARNOLD | ) | |
| E. BERGQUIST, REV. MSGR. | ) | |
| LAWRENCE E. BRANDT, REV. MSGR. | ) | |
| ROBERT L. BRUGGER, DONALD M. | ) | |
| CARLSON, DANIEL C. CARNEVAL, | ) | |
| D.O., HON. STEPHANIE | ) | |
| DOMITROVICH, THOMAS L. DOOLIN | ) | |
| JAMES J. DURATZ, ANTOINE M. | ) | |
| GARIBALDI, THOMAS C. GUELCHER | ) | |
| WILLIAM M. HILBERT, SR., BRIAN J. | ) | |
| JACKMAN, JAMES W. KEIM, JR., | ) | |
| SR. MARY RITA KUHN, SSJ, THOMAS | ) | |
| J. LOFTUS, ANNE D. MCCALLION, | ) | |
| JOSEPH T. MESSINA, MICHAEL J. | ) | |
| NUTTALL, JOHN E. PAGANIE, | ) | |
| DENISE ILLIG ROBISON, JAMES A. | ) | |
| SCHAFFNER, HELEN M. SCHILLING, | ) | |
| M.D., D.D.S, VERY REV. JOHN M. | ) | |
| SCHULTZ, REV. MSGR. ROBERT J. | ) | |
| SMITH, REV. MSGR. LAWRENCE T. | ) | |
| SPEICE, WILLIAM C. SPRINGER, | ) | |
| JAMES F. TOOHEY, BISHOP DONALD | ) | |
| W. TRAUTMAN, SR. ANASTASIA | ) | |
| VALIMONT, SSJ, SR. RICARDA | ) | |
| VINCENT, SSJ, MELVIN | ) | |
| WITHERSPOON, and ALL OTHER | ) | |
| KNOWN AND UNKNOWN MEMBERS | ) | |
| OF THE BOARD OF TRUSTEES OF | ) | |
| GANNON UNIVERSITY DURING THE | ) | |

| | |
|---|---|
| TENURE OF ITS CURRENT          ) | Civil Action No. 2004-80 Erie |
| CHAIRMAN DONALD W. TRAUTMAN  ) | |
| as members of the Board of Trustees   ) | |
| of Gannon University           ) | |
|           and                  ) | |
| BISHOP DONALD W. TRAUTMAN,     ) | |
| MSGR. DAVID RUBINO, ANTOINE    ) | |
| GARIBALDI, and REV. NICHOLAS   ) | |
| ROUCH                          ) | |
| in their individual and official capacities,  ) | |
|           Defendants           ) | |

**DEFENDANTS' JOINT BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT**

**I.    FACTUAL AND PROCEDURAL HISTORY**

The Court is fully aware of the factual and procedural history of this case. Therefore, Defendants will not reiterate in detail the factual and procedural history.

Plaintiff's Motion for Leave to Amend Complaint is presently before the Court. Plaintiff requests leave to file a Second Amended Complaint, which asserts three new counts: one for gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq*. ("Title IX") (Count I), one for retaliatory discrimination against all Defendants under Title IX (Count II) and one for civil conspiracy to violate title IX against all Defendants (Count III); re-pleads her claim for fraudulent misrepresentation against Defendants Gannon, Rubino and Trautman (Count IV); and restates her breach of contract claim against Defendants Gannon and Garibaldi (Count V).

The Defendants have filed a Joint Response in Opposition to the Plaintiff's Motion, placing Counts I, II and III of the Plaintiff's proposed Second Amended Complaint at issue.

## II.  ISSUE PRESENTED

WHETHER THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE HER SECOND AMENDED COMPLAINT, WHICH ASSERTS GENDER DISCRIMINATION AND RETALIATORY DISCRIMINATION CLAIMS UNDER TITLE IX (COUNTS I AND II) AND A CLAIM FOR CIVIL CONSPIRACY TO VIOLATE TITLE IX (COUNT III)?

**Brief Answer:**  No.  The Court should deny Plaintiff's Motion for Leave to Amend as to Counts I, II and III of her proposed Second Amended Complaint because each of those causes of action would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.

## III.  ARGUMENT

### A.  Standard for Reviewing a Motion for Leave to Amend

The standard for reviewing a motion for leave to amend a complaint is well-settled. Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "should be freely given when justice so requires".  However, it is within the sound discretion of the trial court to grant or deny a motion for leave to amend.  *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir. 1983).  The trial court may deny leave to amend where the amendment would not withstand a motion to dismiss.  *Id.  See also, Lorenz v. CSX Corp.* 1 F.3d 1406, 1414 (3d Cir. 1993) (where amendment would not substantially or unduly prejudice an opposing party, denial of a motion for leave to amend must be based on bad faith or dilatory motive, truly undue or

unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment); *Lutz v. Chromatex, Inc.,* 725 F.Supp. 258, 264 (M.D. Pa. 1989) (notwithstanding the liberal amendment policies of Rule 15(a), the court has discretion to deny leave to amend where the proposed amendment would not withstand a motion to dismiss). The proper test for determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading under Rule 12(b)(6) or (f); leave should be denied when there is no set of facts that could be proved under the amendment to the pleading which would constitute a sufficient claim. *Baker v. Pacific Far East Lines, Inc.,* 451 F. Supp. 84, 89 (D.C. Cal. 1978). *See also, Ganthier v. North Shore-Long Island Jewish Health System,* 298 F.Supp. 2d 342, 349 (E.D.N.Y. 2004) (the determination that a proposed amendment is futile is made under the same standards governing a Rule 12(b)(6) motion to dismiss).

### B. Plaintiff's Proposed Counts I, II and III

The Court should deny Plaintiff's Motion for Leave to Amend Complaint as to Counts I, II and II of her proposed Second Amended Complaint because those claims would not withstand a motion to dismiss pursuant to Rule 12(b)(6). The Plaintiff's conclusory assertion that the ministerial exception does not apply to the claims she proposes to pursue under Title IX is incorrect.

In *Petruska v. Gannon University,* 462 F.3d 294 (3d Cir. 2006), *cert. denied*, 127 S.Ct. 2098 (2007), the Third Circuit Court of Appeals unequivocally held that the ministerial exception applies to bar any claim, the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions. *Id.* at 307. As this Court is aware, the Third Circuit affirmed the dismissal of Plaintiff's gender discrimination and retaliatory discrimination claims under Title VII of the Civil Rights Act of 1964, her claim of civil conspiracy

to violate her rights under Title VII and her claim of negligent supervision and retention, and reversed the dismissal of her breach of contract and fraudulent misrepresentation claims.

When it considered whether the ministerial exception barred Plaintiff's Title VII claims, the Third Circuit framed the question before it as: "[W]hether applying Title VII to Gannon's decision to restructure would infringe upon its free exercise rights and whether adjudication of [Plaintiff's] claims would result in unconstitutional entanglement under the Establishment Clause." *Id.* at 303. The Court explained that applying the ministerial exception is not "inherently complex"; it simply requires that federal courts determine only whether the resolution of a plaintiff's claims would limit a church's right to choose who will perform particular spiritual functions, *id.* at 305, n.8, and held: "[t]he ministerial exception, as we conceive of it, operates to bar ***any*** claim, the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions." *Id.* at 307. (emphasis added). The Third Circuit concluded that the resolution of Petruska's Title VII gender discrimination and retaliation claims and her civil conspiracy claim would impose unconstitutional limits on Gannon's First Amendment right to the free exercise of religion, thus, those claims were barred by the ministerial exception. *Id.* at 308, 309. In determining whether to grant or deny Plaintiff's Motion for Leave to Amend, this Court must, with respect to Counts I, II and III of the proposed Second Amended Complaint, answer the same question of whether the application of state or federal law (in this instance, Title IX) will limit Gannon's right to choose who performs particular spiritual functions on its behalf.

Plaintiff's attempt to further amend her complaint to assert claims for gender discrimination and retaliatory discrimination under Title IX and a claim for civil conspiracy to violate Title IX underscores her fundamental misunderstanding of the Third Circuit's decision and

the underpinnings of the ministerial exception.  The Third Circuit affirmed the dismissal of Plaintiff's Title VII claims because applying Title VII's discrimination and retaliation provisions to Gannon's decision to restructure would violate the Free Exercise Clause, and it affirmed the dismissal of Petruska's civil conspiracy count in her First Amended Complaint because that claim turns on her ability to prove that Gannon's restructuring constituted an unlawful or tortious act (a decision the court cannot make because the First Amendment protects Gannon's right to restructure - regardless of its reason for doing so).  *Id. at 308, 309.*

In her Motion for Leave to Amend, Plaintiff candidly admits that she is pursuing the "same claims of gender discrimination and conspiracy", however, she contends the ministerial exception does not bar these claims under Title IX.  *Plaintiff's Motion,* par. 8.  The rationale the Third Circuit applied to hold that Plaintiff's Title VII gender and retaliatory discrimination and conspiracy claims were barred by Gannon's First Amendment right to select who will perform spiritual functions and how those functions will be divided also bars the claims Plaintiff proposes to assert in Counts I, II and II of her Second Amended Complaint.  the Third Circuit summed up its rationale in the conclusion of its opinion:

> The First Amendment protects a church's right to decide matters of faith and to declare its doctrine free from state interference.  A church's ability to select who will perform particular spiritual functions is a necessary corollary right.  The function of Petruska's position as University Chaplain was ministerial in nature, and therefore, her Title VII, civil conspiracy and negligent retention and supervision claims - each of which directly turns on the propriety of Gannon's personnel decisions - must be dismissed.

*Id.* at 312.  The gender and retaliatory discrimination claims and the civil conspiracy claim Plaintiff sets forth in Counts I, II and III of her proposed Second Amended Complaint will likewise directly turn on the propriety of Gannon's personnel decisions.

### (i) Title IX Gender and Retaliatory Discrimination Claims (Counts I and II)

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. §1681(a).  Although not clearly articulated, Plaintiff appears to argue that Gannon cannot raise the ministerial exception as a bar to her proposed Title IX claims because by accepting federal funds Gannon has waived its First Amendment rights or because the ministerial exception simply does not apply to discrimination claims brought under Title IX.  Plaintiff asserts that the ministerial exception is not available as a defense under Title IX because the Supreme Court has said Congress is "free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept", citing *Grove City College v. Bell,* 465 U.S. 555 (1973).

The Defendants have not found any reported cases that have addressed or decided whether the ministerial exception constitutes a bar to gender or retaliatory discrimination claims asserted under Title IX.  Several courts have either directly or implicitly held that for employment discrimination claims brought under Title IX, Title VII's standards for proving discriminatory treatment should apply.  *See generally, Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir. 1988)*, Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203 (4th Cir. 1994); *Murray v. New York University College of Dentistry,* 57 F.3d 243 (2d cir. 1995); *Brine v. University of Iowa,* 90 F.3d 271 (8th Cir. 1996).

The Third Circuit summarized the essence of Petruska's gender and retaliatory discrimination claims when it considered whether the ministerial exception applied to bar her Title VII claims:

> Petruska alleges that Gannon demoted and constructively discharged her from her position as University Chaplain based on her gender and retaliated against her on the basis of her opposition to sexual harassment at the University. Her discrimination and retaliation claims are premised upon Gannon's decision to restructure, a decision which Petruska argues was merely pretext for gender discrimination.

*Petruska*, 462 F.3d at 307. The Third Circuit concluded that because Gannon's choice to restructure constituted a decision about who would perform spiritual functions and about how those functions would be divided, applying Title VII's discrimination and retaliation provisions to the decision would violate the Free Exercise Clause. *Id.,* at 307-08.

The essence of Plaintiff's gender and retaliatory discrimination claims under Title IX is identical to the claims she asserted under Title VII in her First Amended Complaint. Gannon's decision to restructure constitutes a decision about who would perform spiritual functions and how those functions would be divided, whether it is examined in the context of a discrimination claim under Title VII or Title IX. In *Petruska*, the Third Circuit noted that ***any*** restriction on the church's right to choose who will carry its spiritual message necessarily infringes upon its free exercise right to profess its beliefs. *Id.* at 307-08. That right was squarely at issue in Petruska's First Amended Complaint, *id.* at 308, and it will be placed squarely at issue if this Court grants her request for leave to file her Second Amended Complaint.

As noted previously, although not clearly articulated, it appears that Plaintiff is attempting to resurrect her argument that Gannon waived its First Amendment right to select who will perform spiritual functions and how those functions will be divided by accepting federal funds that subject Gannon to Title IX's provisions. As this Court is well aware, Plaintiff previously advanced various arguments that Gannon waived its First Amendment rights, one of which was by accepting federal funds having limitations attached to them. Plaintiff has either forgotten or simply chosen to ignore the fact that this Court and the Third Circuit rejected all of her waiver arguments. Specifically, the Third Circuit held:

> Petruska argues that Gannon waived its right to raise the ministerial exception as a defense by (1) failing to raise it before the EEOC; (2) *accepting state and federal funds with conditions limiting discrimination*; and (3) repeatedly and publicly representing itself as an equal opportunity employer. We find these arguments unpersuasive.

*Id.* at 308. (emphasis supplied)

> Gannon did not "waive" its First Amendment rights by representing itself as an "equal opportunity employer" *or by accepting federal and state funds.* A waiver is an "intentional relinquishment or abandonment of a known right or privilege. "[C]ourts indulge every reasonable presumption against 'waiver' of fundamental constitutional rights." *Here neither Gannon's invocation of "equal employer" language nor its acceptance of funds constitutes a waiver of its First Amendment rights.*

*Id.* at 309. (internal citations omitted) (emphasis supplied).

The gender and retaliatory discrimination claims under Title IX set forth in Counts I and II of Plaintiff's proposed Second Amended Complaint are barred by the ministerial

exception. These claims would be subject to dismissal for failure to state claims upon which relief can be granted, pursuant to Rule 12(b)(6). The Court should therefore deny Plaintiff's Motion for Leave to Amend as it relates to Counts I and II of the Second Amended Complaint.

### (ii) Civil Conspiracy Claim (Count III)

Plaintiff's misunderstanding of the Third Circuit's decision and the basis of the ministerial exception is readily apparent in her attempt to reassert a claim for civil conspiracy against all of the Defendants to violate her rights under Title IX. The civil conspiracy claim Plaintiff asserted in her First Amended Complaint and now proposes to reassert in her Second Amended Complaint are state law tort claims, not claims that arise under federal law. The mere fact that she claims the intent of the alleged conspiracy was to violate a federal law, Title IX, does not alter the nature of the claim.

Noting that a claim of civil conspiracy under Pennsylvania law requires proof that two or more persons combined to do an unlawful act or to do an otherwise lawful act by unlawful means (in the case of the claim asserted in her First Amended Complaint, the violation of Title VII), the Third Circuit succinctly explained why the ministerial exception precluded the civil conspiracy claim (as well as the negligent supervision claim):

> The civil conspiracy and negligent supervision claims turn on Petruska's ability to prove that Gannon's restructuring constituted an unlawful or tortious act. Because the First Amendment protects Gannon's right to restructure - regardless of its reasons for doing so - we cannot consider whether the act was unlawful or tortious and, therefore, these claims must be dismissed.

*Id.* at 309. (footnotes omitted). The state law civil conspiracy claim Plaintiff proposes to assert under Title IX in Count III of her Second Amended Complaint would require the same proof that two or more persons combined to do an unlawful act or to do an otherwise lawful act by unlawful means and would turn on her ability to prove that Gannon's restructuring constituted an unlawful or tortious act. The Third Circuit has already confirmed that the First Amendment protects Gannon's right to restructure, regardless of its reasons for doing so, and the Court cannot consider whether the act was unlawful or tortious.

The civil conspiracy claim set forth in Count III of the proposed Second Amended Complaint is barred by the ministerial exception. This claim would be subject to dismissal for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). The Court should therefore deny Plaintiff's Motion for Leave to Amend as it relates to Count III of the Second Amended Complaint.

### (iii) Relation Back of Plaintiff's New Claims

It is clear, as explained above, that the same constitutional infirmity that proved fatal to Petruska's gender and retaliatory discrimination claims under Title VII and her civil conspiracy claim in her First Amended Complaint bars her from pursuing the same claims under Title IX (Counts I, II and III of her proposed Second Amended Complaint). Even if this were not the case, however, her claims under Title IX would be barred by the applicable statute of limitations.

Petruska argues that Fed.R.Civ.P. 15(c)(2) requires only that her purported Title IX action arise from the same operative set of facts as alleged in her original in order to "relate back" to the original date of filing. While it is true that this rule has been very liberally construed,

relation back to the March 11, 2004 filing of the original complaint is of no benefit to Petruska vis-à-vis her proposed Title IX claims, as *any such cause of action would have been time-barred even as of that date*.

Title IX, itself, makes no reference to a statute of limitations. It has been held, however, that in the absence of a specific limitations period, actions under Title IX, like those under similar civil rights statutes such as §504 of the Rehabilitation Act of 1973 and 42 U.S.C. §1983, are subject to the same limitations period afforded personal injury actions in the state wherein the action is brought. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir.1989). In Pennsylvania, of course, that limits Petruska's actions to a period of two years from the date of the purportedly discriminatory act.

The date upon which the limitations period begins to run in the employment discrimination context is the *date upon which the discrimination occurred*, even if that precedes the ultimate "impact" of the discriminatory act, a concept discussed in detail by the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980). There, the Court held that "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. *Id*. at 257. Additionally, private causes of action under Title IX are not subject to any requirement with regard to the exhaustion of administrative remedies. *Cannon v. University of Chicago*, 99 S.Ct. 1946 (1979).

Based on the allegations set forth in Petruska's original Complaint, as well as the First Amended Complaint and the proposed Second Amended Complaint, it is clear on the face of the pleadings that any supposed claim Petruska believes she has under Title IX accrued more that two (2) years prior to March 11, 2004.

Specifically, in her proposed Second Amended Complaint, Petruska alleges that the decision to restructure the Chaplain's Division of the University was made known to her on July 28, 2000. *Proposed Second Amended Complaint*, par. 26. From that point forward, there is, according to Petruska, no substantive change in the University's position. She alleges that after Dr. Garibaldi assumed the presidency in May 2001, "it became apparent that [Petruska] would not be permitted to function as Chaplain of Gannon." *Proposed Second Amended Complaint*, par. 34. Indeed, the ultimate restructuring of the Chaplain's Division in August of 2002 was, according to Petruska, nothing more than the implementation of the plan announced to her on July 28, 2000. *Proposed Second Amended Complaint*, pars. 44-45. It was purportedly due to this restructuring that Petruska voluntarily resigned her position with the University on October 14, 2002.

Based upon the Supreme Court's analysis in *Ricks*, any claims that Petruska wished to pursue under Title IX had to be filed no later than July 29, 2002. On July 28, 2000, she became aware of the decision by the Bishop to restructure her position in a manner she thought to be discriminatory. Between that date and her resignation, there was no modification of that decision, regardless of whatever else she claims was occurring at that time. She alleges no representations that the decision had been changed, or that the matter was subject to some administrative appeal. As the Supreme Court noted in *Ricks*:

> In sum, the only alleged discrimination occurred-and the filing limitations periods therefore commenced-at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure-the eventual loss of a teaching position-did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that " [t]he proper focus is upon the time of the *discriminatory acts*, not upon the time

> at which the *consequences* of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis added); see *United Air Lines, Inc. v. Evans*, 431 U.S., at 558, 97 S.Ct., at 1889. It is simply insufficient for Ricks to allege that his termination "gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." *Id.* at 557, 97 S.Ct. at 1888. The emphasis is not upon the effects of earlier employment decisions; rather, it " is [upon] whether any present *violation* exists." *Id.* at 558, 97 S.Ct. at 1889 (emphasis in original).

*Ricks*, 449 U.S. at 258 (emphasis in original)(footnote omitted). Petruska, here, has done no more than Ricks. She complains about a single purportedly discriminatory act that occurred on or before July 28, 2000. That she did not choose to quit her job *because of the very decision that was announced to her on that date* until two (2) years after she became aware of it, and several months after it was implemented, does not extend the time in which she might file an action under Title IX. There was no tolling of the limitations period because of any administrative proceeding, nor was she otherwise barred from pursuing these claims in a timely fashion.

Accordingly, even if the Court were to overlook the constitutional prohibition of Petruska's Title IX claims and allow the filing of Counts I-III of the proposed Second Amended Complaint over those objections and allow the claims to relate back to March 11, 2004, such filing would be without effect, as that date is some 44 months after the date of her "discovery" of the alleged discriminatory action complained of.

IV.     **CONCLUSION**

This Court should deny Plaintiff's Motion for Leave to Amend Complaint as it relates to Counts I, II and III of the proposed Second Amended Complaint because these claims would be subject to dismissal under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.  Moreover, the Court should deny the Motion without leave to further amend as to any claim that directly turns on the propriety of Gannon's personnel decisions.  Dismissal without leave to amend is justified on the grounds of futility (failure to state a claim), *Alston v. Parker,* 363 F.3d 229, 236 (3d Cir. 2004), and any attempt by Plaintiff to assert a claim that turns on the propriety of Gannon's personnel decisions would be futile.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

/s/ Evan C. Rudert
Evan C. Rudert, Esquire
150 East Eighth Street
Erie, Pennsylvania  16501-1269
(814) 456-4000
Attorneys for All Defendants *other than*
   Trautman, Rubino, Garibaldi and Rouch *in*
   *their individual capacities*

QUINN, BUSECK, LEEMHUIS,
TOOHEY & KROTO, INC.

/s/ Arthur D. Martinucci
Frank L. Kroto, Jr. Esquire
Arthur D. Martinucci, Esquire
2222 West Grandview Boulevard
Erie, PA 16506-4509
(814) 833-2222
Attorneys for Trautman, Rubino, Garibaldi
   and Rouch, *in their individual capacities*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing pleading/document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing to the following: C. John Pleban and AnnDrea M. Benson, counsel for Plaintiff, and Frank L. Kroto, Jr. and Arthur D. Martinucci, counsel for Defendants Trautman, Rubino, Garibaldi and Rouch *in their individual capacities*. I further certify that I mailed a true and accurate copy of the foregoing pleading/document to the following individuals on July 16, 2007, using United States mail, first class postage prepaid:

| | |
|---|---|
| C. John Pleban, Esquire | AnnDrea M. Benson, Esquire |
| 2010 South Big Bend Blvd. | 12270 Woodside Drive |
| St. Louis, MO 63117 | Edinboro, PA 16412 |
| Attorney for Plaintiff | Attorney for Plaintiff |

Frank L. Kroto, Jr., Esquire
Arthur D. Martinucci, Esquire
2222 West Garndview Blvd.
Erie, PA 16506
Attorneys for Defendants Trautman,
Rubino, Garibaldi and Rouch, *in their individual capacities*

                                                    */s/ Evan C. Rudert*