UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DISTRICT COURT

| | | |
|---|---|---|
| LYNETTE M. PETRUSKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:04-cv-00080-SJM |
| | ) | |
| GANNON UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' JOINT BRIEF IN OPPOSTION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

**I.    ANALYSIS**

    **A.    TITLE IX CLAIMS**

Defendants argue that Plaintiff should be denied leave to amend her complaint because Counts I through III would not survive a motion to dismiss. They base this claim almost exclusively upon the Third Circuit Court of Appeal's ruling involving Plaintiff's Title VII claims in Petruska v. Gannon University, 462 F.3d 294 (3rd Cir. 2006). In taking this position, they ignore more relevant Supreme Court precedent involving Title IX claims in the hopes of convincing this Court to apply the "ministerial exception" to Counts I through III of Petruska's Second Amended Complaint. As the Third Circuit itself made clear, the "ministerial exception" is not a bar to all claims involving a church and its ministers. For the reasons discussed below, the application of the "ministerial exception" to Petruska's Title IX based claims would be inappropriate and leave to amend should be granted.

Title IX of the Educational Amendments of 1972 provides in relevant part:

> (a) No person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that: …
>
> (3) this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization. 20 U.S.C. § 1681(a).

Under Title IX, Congress has created a very limited exemption/exception to its prohibition against gender discrimination for religiously affiliated educational institutions: they may discriminate on the basis of gender when gender discrimination is required by the religious tenets of the organization. In this case, no religious tenet protects the Defendants illegal discrimination and retaliation against Petruska. Petruska did not apply for the position of University Chaplain: Gannon's then priest president (before being forced to resign due to sexual harassment and other acts of sexual misconduct) asked her to serve in this position, knowing full well that she is a woman. Petruska's appointment as Chaplain was approved by Bishop Donald Trautman (hereinafter "Trautman"), Chair of the Gannon Board of Trustees. Therefore, Defendants cannot credibly claim and do not attempt to claim that limiting the position at issue to men was required by the religious tenets of the organization. Certainly, Defendants do not claim that their retaliation against Petruska for opposing the cover-up of priest sexual misconduct and other gender discrimination on Gannon's campus was required by the religious tenets of the Roman Catholic Church.

Instead, Defendants attempt to apply the "ministerial exception" to this case, despite Congress' clear intent as to the scope of Title IX and a previous Supreme Court case rejecting a

2

First Amendment challenge to the application of Title IX to a religiously affiliated educational institution. In previously rejecting a First Amendment challenge to Title IX, the Supreme Court stated:

> Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept. Grove City may terminate is participation in the BEOG program and thus avoid the requirements of § 901(a). … Requiring Grove City to comply with Title IX's prohibition of discrimination as a condition for continued eligibility to participate in the BEOG program infringes no First Amendment rights of the College or its students. Grove City College v. Bell, 465 U.S. 555, 575 (1984) (citations omitted).

Section 901 of Title IX was codified at 20 U.S.C. § 1681(a), quoted above. Therefore, the United States Supreme Court has already rejected Defendants First Amendment defense to Peturska's Title IX claims. Simply put, if Gannon wants to discriminate on the basis of gender and retaliate against those who engage in protected activity under Title IX without consequence, it may do so by opting out of the federal financial assistance at issue and the strings attached to it. That the Third Circuit in Petruska's Title VII case used unnecessarily broad language to define the scope of the judicially created "ministerial exception" does not negate Supreme Court precedent directly on point as to the issue before this Court. Cf. Defendants' Joint Brief, p. 5. Because Gannon has accepted federal financial assistance, it is bound by the reasonable and unambiguous prohibitions contained in Title IX, which infringes no First Amendment right.

Grove City College further held that the prohibitions of Title IX applied only to those programs and/or activities receiving federal financial assistance, it did not impose institution-

3

wide obligations. *Id.* at 574-75. Significantly, Congress rejected this limitation on the scope of Title IX in 1988. Congress defined a "program or activity" as "all of the operations of … a college, university, or other postsecondary institution, or a public system of higher education … any part of which is extended Federal financial assistance." 20 U.S.C. § 1687. Once again an exemption/exception was made for entities controlled by a religious organization "if the application of section 901 [20 USCS § 1681] to such operation would not be consistent with the religious tenets of the organization." *Id.* Since the 1988 amendment, "courts have consistently interpreted Title IX to mean that if one arm of a university or state agency receives federal funds, the entire entity is subject to Title IX's proscription against sex discrimination." O'Connor v. Davis, 126 F.3d 112, 117 (2nd Cir. 1997). As set forth above, Defendants make no claim that the application of Title IX in this case is inconsistent with the religious tenets of the organization. They simply make a broad and unsupported claim that the "ministerial exception" applies in Title IX cases, despite Supreme Court precedent to the contrary.

That courts have applied the same or similar legal standards used in Title VII actions to determine when discrimination has occurred for purposes of Title IX liability does not resolve the issue of whether the First Amendment protects Defendants against Plaintiff's Title IX claims. See Defendants' Joint Brief, p. 7. This is particularly true because the Supreme Court already held that a First Amendment defense to a claim under 20 U.S.C. § 1681(a) "warrants only brief consideration" before rejecting such a defense. Grove City College, 465 U.S. at 575. The only First Amendment defense that Congress reasonably and unambiguously permits in the application of Title IX to a religiously affiliated educational institution is when its application would be inconsistent with the "religious tenets of the organization," which is not the case here. The judicially created "ministerial exception" applied in Title VII cases or to state tort law

4

claims where the receipt of federal financial assistance is not at issue offers Defendants no protection against Petruska's Title IX claims.

Defendants emphasize the potential for First Amendment infringement (discussed more fully below) should this Court apply Title IX in her case, while ignoring the fact that Gannon has accepted federal financial assistance (which it has no obligation to accept) with the conditions Congress imposed, a crucial difference between Title VII and Title IX actions. Once again the Supreme Court has clearly and unambiguously held that "Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept." *Id.* Requiring Gannon to comply with the requirements of Title IX when it accepts federal funding specifically conditioned upon compliance with it, does not infringe Gannon's First Amendment rights. *Id.*

Defendants also argue that Petruska is attempting to "resurrect" her waiver argument in asserting Title IX liability in her case. Apparently Defendants believe that because Gannon is a religiously-based institution, it does not have to comply with Congress' Title IX mandates when it accepts federal financial assistance. However, if Gannon does not wish to comply with Title IX, it can simply reject federal assistance and freely engage in gender-based discrimination and retaliation for any reason. Once it accepts such funding, it must comply with Title IX (except when to do so would violate its religious tenets), and when it does not, the victim of illegal gender discrimination or retaliation is permitted a private cause of action. Cannon v. University of Chicago, 441 U.S. 677 (1979) and Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005).

That the Third Circuit held that a religiously affiliated university in its capacity as an employer cannot waive the First Amendment in Title VII actions by accepting federal funds does

5

not mean that Title IX does not apply to that same institution when it accepts funds specifically conditioned upon compliance with Title IX. The Supreme Court has already resolved this issue holding that to require Gannon to comply with Title IX infringes no First Amendment right. Grove City College, 465 U.S. at 575. There can be no First Amendment infringement when an institution is simply required to comply with reasonable and unambiguous conditions imposed on the receipt of federal funds, and therefore, there is no waiver issue to consider in this case.

In a similar context, Bob Jones University unsuccessfully argued that its denial of charitable tax exempt status violated both the Free Exercise and Establishment Clauses of the First Amendment when it was denied such status on the basis of its genuinely held religious belief that the Bible forbids interracial dating and marriage. Bob Jones University v. United States, 461 U.S. 574 (1983). (As set forth above, the Defendants articulate no religious tenet that would protect the discrimination and retaliation Petruska suffered.) In rejecting Bob Jones' Free Exercise Clause claim, the Court held that "[not] all burdens on religion are unconstitutional. … The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding government interest." *Id.* at 603. (citations omitted). The Court found the government's interest in eradicating racial discrimination "compelling," as evidenced by the enactment of Titles IV and VI of the Civil Rights Act of 1964. *Id.* at 594 & 604. Similarly, the government's interest in eradicating gender discrimination, which has also existed since the founding of the nation, is equally compelling, as evidenced by Congress' enactment of Title IX of the Educational Amendments of 1972. The government's interest in eradicating illegal gender discrimination outweighs any burden placed on the exercise of Gannon's religious beliefs, particularly when Gannon has not and cannot identify any religious tenet/belief to justify its discrimination/retaliation against Petruska. See *id.* at 604. The Supreme Court has already

6

concluded that educational institutions that practice discrimination should not be encouraged "by having all taxpayers share in their support." *Id.* at 595.

The Supreme Court also rejected Bob Jones' Establishment Clause challenge because the IRS policy at issue was neutral and secularly based (as is Title IX), which does not violate the Establishment Clause. Additionally, the Court held that the uniform application of the rule to all religious schools "*avoids* the necessity for a potentially entangling inquiry into whether a racially restrictive practice is the result of a sincere religious belief." *Id.* (emphasis original). Here the Court does not even have to determine whether Petruska's discrimination and retaliation were the result of a sincerely held religious belief or tenet because none is claimed by the Defendants.

Clearly, the "ministerial exception" has no application in Title IX cases under more relevant Supreme Court precedent than the Third Circuit's <u>Petruska</u> decision, relied upon by the Defendants. It is unclear how the Defendants can even make such a claim in good faith when Congress has clearly stated that Title IX's gender discrimination prohibition applies to **all** operations of a university receiving federal funding and the Supreme Court has held that applying 20 U.S.C. § 1681(a) to a religiously affiliated institution does not violate the First Amendment because it need not accept the funds with the conditions attached. Therefore, Petruska has stated claims for relief in Counts I and II of her Second Amended Complaint.

### B.     CONSPIRACY TO VIOLATE TITLE IX

Defendants claim that Petruska's conspiracy claim must fail because it is nothing more than a reassertion of her state law claim rejected by the Third Circuit. This simply is not the case. Federal courts recognize conspiracy claims as federal causes of action when federal rights are violated. For example, two or more state actors can enter into a conspiracy to violate § 1983. To plead and prove such a conspiracy, a plaintiff need only show "an agreement of two or more

conspirators to deprive the plaintiff of a constitutional right under color of law." <u>Gleeson v. Robson</u>, 2005 U.S. Dist. LEXIS 43310, *72 (M.D. Pa. 2005), *aff'd,* <u>Gleeson v. Prevoznik</u>, 190 Fed. Appx. 165 (3rd Cir. 2006).  Similarly, the Third Circuit has held that a claim of conspiracy to violate one's civil rights only requires "a separate underlying tort as a predicate for liability." <u>Pardue v. Gray</u>, 136 Fed. Appx. 529, 533 (3rd Cir. 2005).  Here that separate, underlying predicate tort is the violation of Petruska's rights secured by Title IX.  For the reasons discussed above, Petruska's Title IX claims state claims for relief, and therefore, Petruska has also stated a claim upon which relief can be granted in Count III of her Second Amended Complaint for the conspiracy to violate her civil rights.

### C.   RELATION BACK

Defendants do not attempt to convince this Court that the claims alleged in Counts I through III of Peturska's Second Amendment complaint do not relate back to her original filing on March 11, 2004 (because it cannot), but that as of March 11, 2004, these claims were nonetheless time barred.  Defendants adopt a novel approach to determining when illegal discrimination occurs in support of their claim that Petruska's claims are time barred.  According to Defendants the illegal acts of discrimination and retaliation occurred against Petruska when Trautman and Rev. Nicholas Rouch (hereinafter "Rouch") first instructed Thomas Ostrowski (hereinafter "Ostrowski," then acting president) to take action against her in 2000, even though Ostrowski refused to do so and no discriminatory action was taken against Petruska until August 21, 2002.  If Defendants argument were accepted by this Court, employees would have to file charges of illegal discrimination in Title VII cases and/or lawsuits in Title IX cases every time an employer threatened an act perceived as discriminatory because some day it might be carried out and tied to the original threat, substantially increasing EEOC and court filings.  A discussion

regarding discrimination against an employee, even if the employee learns about such discussion before the act of discrimination occurs, is clearly not the same as a discriminatory act. Defendants' argument only establishes their desperation to avoid liability for their misconduct.

In the present case, the discrimination/retaliation of which Petruska complains occurred on August 21, 2002, when Garibaldi informed Petruska that she was being removed from the President's Staff and placed under the supervision of Rouch. Before the Third Circuit Court of Appeals, Defendants argued that Petruska's demotion did not constitute an adverse employment action. This argument was orally rejected by both panels that heard Petruska's appeal, as Defendants are well aware. Additionally, Petruska was retaliated against by Garibaldi on October 8, 2002, when he threatened to retaliate against her because she refused to cooperate in the illegal discrimination she had suffered on August 21, 2002. Finally, after enduring a hostile work environment since Garibaldi's appointment (which had negatively impacted Petruska's health) and Garibaldi's threat of further retaliatory action, Petruska was constructively discharged on October 14, 2002. All of these acts were pled on March 11, 2004, well within the two year limitations period for bringing a cause of action under Title IX.

Defendants' reliance upon Delaware State College v. Ricks, 449 U.S. 250 (1980) is simply misplaced. In Ricks, an employee was notified of the Board's official decision that he was denied tenure and offered a terminal contract for the next academic year. The Supreme Court held that the discriminatory act occurred when the plaintiff was denied tenure, even though the effect of that decision was delayed for one year through the terminal contract offered to him. *Id.* at 505. The Supreme Court **did not** conclude that the discriminatory act occurred the year before Ricks was officially denied tenure because members of the college (the tenure committee) recommended that he be denied tenure then and that same decision was implemented the

9

following year.  It would be an unreasonable interpretation of the discrimination laws to require an employee to take action or lose his/her rights every time a threatened act of discrimiation might happen at some unknown time in the future.

Rather, the focal point of the Supreme Court's analysis in <u>Ricks</u> was the date of the discriminatory **act**.  In <u>Ricks</u>, the act triggering the statute of limitations was the official act of denying him tenure, not the college's previous discussions about denying Ricks tenure.  Similarly, in this case, the first act of illegal discrimination was Petruska's demotion removing her from the president's staff and placing her under Rouch's supervision.  Prior to that date, no discriminatory/retaliatory act had been taken against Petruska which would have provided the basis for a cause of action under Title IX (or Title VII).  Had Petruska attempted to take legal action in 2000, either by filing a Title VII complaint or through a Title IX lawsuit, the Defendants would have claimed that such action was without basis in fact because no discrimination had occurred because she suffered no adverse employment action.

Defendants themselves argue that courts generally apply Title VII's legal standards in determining whether gender discrimination has occurred under Title IX.  One of the essential elements of a *prima facie* case of discrimination under Title VII is an adverse employment action.  <u>Marzano v. Computer Science Corp.</u>, 91 F.3d 497, 508 (3rd Cir. 1996).  Petruska's cause of action accrued on the date she was told by Garibaldi that she would be demoted because this was the date of the adverse employment action, not two years before when Ostrowski refused to comply with Trautman and Rauch's illegal scheme, and therefore, nothing happened to change the terms and conditions of her employment.  Applying <u>Ricks</u> to the facts of this case would require the dismissal of Petruska's claims as time barred only if Petruska had failed to take action within two years of August 21, 2002, when the official decision to demote her was

communicated to her by Garibaldi. Petruska's complaint filed on March 11, 2004 (well within two years of August 21, 2002) was timely, and therefore, Defendants' purported statute of limitations defense is completely without merit.

## II.    CONCLUSION

For the reasons set forth herein and in Petruska's Motion for Leave to Amend Complaint and supporting legal memorandum previously filed with this Court, Petruska should be granted leave to file her Second Amended Complaint. Finally, consistent with Local Rule 7.1(B), Petruska attaches her proposed order for leave to amend hereto as Exhibit 1.

    Respectfully submitted,

    Pleban & Associates, L.L.C.

    By    s/ C. John Pleban
       C. John Pleban, MO24190
       2010 South Big Bend Blvd.
       St. Louis, MO 63117
       Telephone: 314/645-6666
       Facsimile: 314/645-7376
       cpleban@plebanlaw.com

    By    s/ AnnDrea M. Benson w/ permission
       AnnDrea M. Benson, PA82563
       12270 Woodside Drive
       Edinboro, PA 16412-5302
       Telephone (814) 734-3428
       Facsimile: (814) 734-3428 (same)
       benson_mcfarlane@verison.net

    Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Frank L. Kroto, Jr., Arthur D. Martinucci, and Evan C. Rudert.  A true and accurate copy of the foregoing Motion for Leave to Amend Complaint was also mailed, postage prepaid to Evan Rudert, 150 East Eighth Street, Erie, PA 16501-1269, attorney for defendants Gannon University, the Board of Trustees of Gannon University, all members of the Board of Trustees and Trautman, Garibaldi, Rubino and Rouch in their official capacities, and to Arthur D. Martinucci and Frank Kroto, Jr., 222 W. Grandview Blvd., Erie, PA 16506, attorneys for Trautman, Garibaldi, Rubino and Rouch in their individual capacities, this 23rd day of July, 2007.

                                                                   /s/ C. John Pleban

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DISTRICT COURT

| | |
|---|---|
| LYNETTE M. PETRUSKA, | ) |
| Plaintiff | ) |
| vs. | ) Cause No. 1:04-cv-00080-SJM |
| GANNON UNIVERSITY, et al., | ) |
| Defendants | ) |

PROPOSED ORDER

This matter is before the Court on Plaintiff's Motion for Leave to Amend Complaint. The motion being fully briefed by the parties and the Court having fully considered all arguments in support and in opposition to the motion,

IT IS HEREBY ORDERED that Plaintiff is GRANTED leave to file her Second Amended Complaint.

_____
Honorable Sean J. McLaughlin
United States District Judge

Dated: _____

**EXHIBIT 1**