**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNETTE M. PETRUSKA, ) | |
|          Plaintiff, ) | Civil Action 1:04-cv-80 |
|     v. ) | |
| GANNON UNIVERSITY, et al., ) | |
|          Defendants. ) | |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.

Presently pending before the Court in the above-captioned case is a motion by the Plaintiff, Lynette Petruska, seeking leave to file a Second Amended Complaint in the above-captioned matter. We have jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

### I.  BACKGROUND

Plaintiff's First Amended Complaint ("FAC") was previously before this Court in December of 2004 on consideration of a motion to dismiss filed by the Defendants. In her FAC Plaintiff alleged, *inter alia*, that she was demoted and constructively discharged from her position as Gannon University's Chaplain based on her gender and that she was retaliated against on the basis of her opposition to sexual harassment that had been occurring at the University. These gender discrimination and retaliation claims arose from the University's decision to restructure its Chaplain's Division, an employment decision which was adverse to Plaintiff. The FAC sought recovery against some or all of the Defendants under six different theories, *i.e.*: gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3 (Count 1); retaliatory discrimination in violation of Title VII (Count 2); fraudulent misrepresentation (Count 3); civil conspiracy premised upon Title VII

violations (Count 4); breach of contract (Count 5); and negligent supervision and retention (Count 6).

By Memorandum Opinion and Order entered on December 27, 2004, this Court dismissed the FAC in its entirety based on our application of the "ministerial exception." *See Petruska v. Gannon University*, 350 F. Supp. 2d 666 (W.D. Pa. 2004). After Plaintiff filed a notice of appeal, the Third Circuit Court of Appeals affirmed our rulings as to Counts 1, 2, 4, and 6. *See Petruska v. Gannon University*, 462 F.3d 294, 299 (3d Cir. 2006). With respect to Count 3 of the FAC (fraudulent misrepresentation), the court held that the claim was not precluded by the ministerial exception but that it should nevertheless be dismissed due to Plaintiff's failure to allege fraud with the requisite specificity under Fed. R. Civ. P. 9(b). *Id*. at 299, 310. In a footnote, the court anticipated that Plaintiff would be given leave to re-plead that claim on remand. *Id*. at 310 n. 15. As to Count 5 of the FAC, the Court of Appeals ruled that the ministerial exception did not preclude Plaintiff from prosecuting her breach of contract claim at the Rule 12(b)(6) stage, and it remanded that claim for further proceedings. *Id.* at 310-12.

Plaintiff now seeks leave to file a Second Amended Complaint ("SAC"). Her first three counts are new theories premised upon alleged gender discrimination in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*. (Count 1); retaliation in violation of Title IX (Count 2); and civil conspiracy to violate Title IX (Count 3). Counts 4 and 5 assert state law claims for fraudulent misrepresentation and breach of contract.

Defendants have filed a response in which they oppose Plaintiff's motion only insofar as it seeks to assert the new claims under Title IX. Plaintiff has filed a response to Defendants' opposition, and the matter is ripe for review.

## II.  STANDARD OF REVIEW

The decision whether to grant a motion for leave to amend a pleading is within the sound discretion of the District Court. *Winer Family Trust v. Queen*, 503 F.3d 319,

331 (3d Cir. 2007); *Cureton v. Nat'l Collegiate Athletic Ass'n.*, 252 F.3d 267, 272 (3d Cir.2001). Although leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), a district court may deny leave to amend on the ground that the proposed amendment would cause undue delay or prejudice, or that the amendment would be futile. *Winer Family Trust,* 503 F.3d at 330-31; *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir.2004).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 493 F.3d 393, 400 (3d Cir. 2007). Thus, "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)", *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.2000); *i.e.*, it accepts all pleaded allegations as true and views them in the light most favorable to the plaintiff. *Winer Family Trust, supra*, at 331; *In re Alpharma*, 372 F.3d at 153-54. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (noting that, after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S. Ct. 1995 (2007), it is still accurate to state that, under Rule 12(b)(6), "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.") (citation omitted).

### III.  DISCUSSION

Defendants oppose the Plaintiff's motion to add new claims alleging gender discrimination, retaliation, and civil conspiracy in violation of Title IX.[1] They contend that these new claims, like the previous Title VII and conspiracy claims, are barred by the ministerial exception and, therefore, the proposed amendments are futile because

---

[1] Defendants agree that Plaintiff's motion should be granted insofar as it asserts claims of fraudulent misrepresentation and breach of contract.

the new claims cannot survive a motion under Rule 12(b)(6). We agree.

A.

In *Petruska*, *supra*, the Third Circuit joined seven other circuit courts of appeal and formally adopted the ministerial exception, holding that "it applies to any claim, the resolution of which would limit a religious institution's right to choose who will perform particular spiritual functions." 462 F.3d at 298. The key questions framed by the court in *Petruska* were "whether applying Title VII to Gannon's decision to restructure [the Chaplain's Division] would infringe upon its free exercise rights and whether adjudication of Petruska's Title VII claims would result in unconstitutional entanglement under the Establishment Clause." *Id*. at 303. The court found it "clear from the face of Petruska's complaint... that Gannon's choice to restructure constituted a decision about who would perform spiritual functions and about how those functions would be divided." *Id*. at 307-08. The court therefore ruled that "application of Title VII's discrimination and retaliation provisions to Gannon's decisions to restructure would violate the Free Exercise Clause." *Id*. at 308. Accordingly, the court of appeals agreed that those claims should be dismissed.[2]

On remand, Plaintiff frankly admits that she is now "pursu[ing] the same factual claims of gender discrimination, retaliation, and conspiracy in counts I through III of her Second Amended Complaint under a different legal theory, Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*.." (Pl.'s Br. in Supp. of Mot. for Leave to Amend Complaint [Doc. # 78] at p. 4.) However, in evaluating gender discrimination claims under Title IX, courts employ the same *McDonnell Douglas*[3] burden-shifting framework as is used in Title VII cases. *See Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir.1996); *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir.1994)

---

[2] Because it held that dismissal of Plaintiff's Title VII claims was compelled under the Free Exercise Clause, the court did not decide whether dismissal would also be compelled under the Establishment Clause.

[3] *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

(courts have interpreted Title IX by looking to the body of law developed under Titles VI and VII); *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 206-07 (4th Cir.1994); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir.1988).[4]  Accordingly, the same First Amendment problems that plagued Plaintiff's Title VII claims inhere in her proposed claims based on Title IX.

An analysis of the Third Circuit's reasoning in *Petruska* shows why this is so.  As the court of appeals observed, the Free Exercise Clause of the First Amendment protects not only a church's "right to believe and profess whatever religious doctrine [it] desires," 462 F.3d at 306, but also its "right to decide matters of faith, doctrine, and church governance."  *Id*.  B*oth* of these rights, the court found, were implicated by Plaintiff's Title VII claims.  As to the first right, – i.e, the right to freely express religious beliefs, profess matters of faith and communicate one's religious message – the court noted that a church's process for selecting its ministers is *per se* a religious exercise because of the fact that a minister "is the embodiment of [the church's] message" and "serves as the church's public representative, its ambassador, and its voice to the faithful."  *Id*.  That right, the court found, was "squarely at issue" in the FAC.  So too, the court found, was the second Free Exercise Clause right – the church's right to decide matters of governance and internal organization.  *Id*. at 307.  As the court explained:

> The Vice President for Mission and Ministry and the University Chaplain at Gannon both serve spiritual functions – in other words, the primary duties of those employees include "teaching, spreading the faith, church governance, supervision of a religious order, or supervision of participation in religious ritual and worship." [ ]  *See Rayburn [v. Gen'l*

---

[4] The same is true with respect to retaliation claims asserted under Title IX.  *See Burch v. Regents of University of California,* 433 F. Supp. 2d 1110, 1125 (E.D. Cal. 2006) (applying standards for retaliation claim under Title VII to claim of retaliation for advocacy of rights under Title IX); *Frazier v. Fairhaven School Committee*, 122 F. Supp. 2d 104, 113 (D. Mass. 2000) (same); *Gyda v. Temple University*, No. CIV. A. 98-1374, 2000 WL 675722 at *5 (E.D. Pa. May 23, 2000) (same); *Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, No. Civ. A. 96-6986, 1999 WL 1012948 at *26 (E.D. Pa. Nov. 08, 1999 (same); *Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998) (same), *aff'd* 194 F.3d 1315 (6th Cir.1999).

> *Conf. of Seventh Day Adventists,* 772 F.2d 1164 (4th Cir. 1985)] at 1169. Accordingly, Gannon's decisions regarding who to install in those positions and the manner in which their duties would be divided were decisions about who would perform those constitutionally protected spiritual functions. Those choices are protected from governmental interference by the Free Exercise Clause.

462 F.3d at 307. Plaintiff cannot circumvent these constitutional problems merely by refurbishing her original Title VII claims as new theories under Title IX.

We note, however, that Plaintiff has asserted several arguments as to why she may successfully assert Title IX claims in lieu of her original gender discrimination and retaliation claims under Title VII. Fundamentally, these arguments all rest on the erroneous assumption that the ministerial exception is not available under Title IX.

Plaintiff's primary argument is based on the statutory language of Title IX, which provides, in relevant part:

> (a) Prohibition against discrimination; exceptions
>
> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:
>
> \*\*\*
>
> (3) Educational institutions of religious organization with contrary religious tenets
>
> > this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization.

20 U.S.C. § 1681(a) and (a)(3). Plaintiff contends that this language makes clear Congress' intent that Title IX should have broad application. In fact, Plaintiff posits, "[t]he only First Amendment defense that Congress reasonably and unambiguously permits in the application of Title IX to a religiously affiliated educational institution is when its application would be inconsistent with the 'religious tenets of the organization,'" which, Plaintiff notes, "is not the case here." (Pl.'s Reply to Def.s' Joint Br. in Opp. to Pl.'s Mot. for Leave to Amend Complaint [Doc. # 81] at p. 4.) Plaintiff characterizes this limited statutory exception as "much narrower than the 'ministerial exception' carved out

6

by the courts in Title VII.'"  (Pl.'s Br. in Supp. of Mot. to Amend Compl. [Doc. # 78 at p. 5.)  Accordingly, she concludes, the ministerial exception is not a defense available under Title IX.

This argument is not persuasive.  For one, the distinctions between Title VII and Title IX are not material to our application of the ministerial exception.  Like Title IX, Title VII provides an express, limited, statutory exemption for religious organizations, such as Gannon, in situations where the organization's challenged conduct is religiously motivated.  *See generally* 42 U.S.C. §2000e-1(a) (providing an exception for a "religious ... educational institution... with respect to employment of individuals of a particular religion to perform work connected with the carrying on ... of its activities"); *id*. at § 2000e-2(e) (permitting religious educational institutions "to hire and employ employees of a particular religion").  However, in considering Plaintiff's prior appeal, the Third Circuit did not construe Title VII in so limiting a fashion as to allow only defenses based on these express statutory exemptions.  Rather, the court of appeals recognized the ministerial exception as an independent defense available to the Defendants because of Plaintiff's unique status as an individual whose "primary duties involved ministerial functions."  *Petruska*, 462 F.3d at 307-08 and n.10.

Moreover, Plaintiff's argument rests on a fundamental misunderstanding about the underpinnings of the ministerial exception.  By assuming that the only possible First Amendment defense available to Defendants is the one expressly provided by Congress, Plaintiff overlooks the fact that the ministerial exception is rooted in a source of law higher than legislative enactments – namely, the First Amendment of the Constitution.  As we previously observed, "the ministerial exception is not a doctrine borne of any express statutory exemption," but is rather "a judicially created doctrine which arises from well-recognized First Amendment principles and which exists quite independent of Title VII or any other statute."  *Petruska*, 350 F. Supp. 2d at 681.  *See also Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 306 (4th Cir. 2004 (ministerial exception is based on constitutional principles and not on

congressional debate or administrative guidelines). Our circuit court of appeals acknowledged this fact when it held that, notwithstanding Title VII's express prohibition against employment decisions based on gender, and notwithstanding the facial applicability of that prohibition to religious institutions like Gannon, constitutional principles nevertheless forbid the application of Title VII (or, for that matter, any other law) to any claims whose resolution would necessarily limit a religious institution's right to determine who will perform particular spiritual functions on its behalf.[5]  462 F.3d at 307-08. In short, the ministerial exception acts as a constitutionally-mandated limitation upon the reach of Title VII – and Title IX – to the extent those laws as applied would infringe Gannon's First Amendment right to choose its "ministers" (as that term is defined by our circuit court of appeals).

As additional evidence to support her view that the ministerial exception has no application in a Title IX case, Plaintiff refers us to the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555 (1984). We find this reference unhelpful to Plaintiff's cause.

---

[5] In undertaking its analysis of the ministerial exception, the Court of Appeals initially considered whether it could construe Title VII in a manner that would not present significant risks of constitutional infringement. *See Petruska*, 462 F.3d at 303 n. 4 (citing *Geary v. Visitation of the Blessed Virgin Mary Parish Sch.*, 7 F.3d 324, 327 (3d Cir. 1993)). The court concluded that such "constitutional avoidance" was not possible in this case because both the plain text of Title VII and its legislative history make clear that "Congress intended Title VII to apply to cases involving sexual discrimination and retaliation by religious institutions." *Id*. Accordingly, the court resolved that it would have to determine whether application of Title VII to a ministerial employment relationship violates the First Amendment. *Id*.

In determining that such an application of the statute would violate First Amendment principles, our court of appeals next determined that the appropriate remedy was to recognize "a narrow exception to prevent the unconstitutional enforcement of Title VII," *id*. at 305 n.8 (citing *Ayotte v. Planned Parenthood of Northern New England*, — U.S. —, 126 S. Ct. 961 (2006), rather than invalidate the entire statute. *See id*. at 306 n. 8 ("[W]e agree with the implied findings of our sister circuits that Congress would prefer a tailored exception to Title VII than a complete invalidation of the statute.").

The dispute in *Grove City* originated from an administrative regulation adopted pursuant to Title IX which authorized the Secretary of Education to obtain from recipients of federal aid an "Assurance of Compliance" with Title IX and its accompanying regulations. A dispute arose when the Department of Education sought a certificate of compliance from Grove City College, an independent, private liberal arts college which had consistently refused state and federal financial aid. The Department of Education took the position that Grove City was subject to Title IX on account of the fact that it enrolled students who received direct federal Basic Educational Opportunity Grants under the Department's Alternative Disbursement System. Based on the College's refusal to execute an Assurance of Compliance, the Department instituted an administrative proceeding which resulted in the termination of assistance to the affected students until such time as the College executed the certificate and satisfied the Department that it was in compliance with the applicable regulations. The College and four of its students filed suit in federal district court challenging this ruling. The Supreme Court ultimately agreed with the Department that Grove City was a recipient of "Federal financial assistance" within the meaning of Title IX, but it held that only the College's own financial aid program was affected by the assistance and thus, Title IX's coverage would be limited to that program. 465 U.S. at 569-70, 573-74.

The general holding of *Grove City College* is completely inapposite to the questions presented in this matter. Nevertheless, Plaintiff insists that the *Grove City* case is "binding precedent" which is "directly on point" because, in the course of its discussion, the Supreme Court rejected a First Amendment challenge raised by the College. The relevant portion of the Court's discussion reads as follows:

> Grove City's final challenge to the Court of Appeals' decision - that conditioning federal assistance on compliance with Title IX infringes First Amendment rights of the College and its students - warrants only brief consideration. Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept. *E.g., Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 17, 101 S. Ct. 1531, 1539, 67 L. Ed. 2d 694 (1981). Grove City may terminate its participation in the BEOG program and thus avoid the requirements of § 901(a). Students affected by the

> Department's action may either take their BEOGs elsewhere or attend Grove City without federal financial assistance. Requiring Grove City to comply with Title IX's prohibition of discrimination as a condition for its continued eligibility to participate in the BEOG program infringes no First Amendment rights of the College or its students.

465 U.S. at 575-76. Plaintiff infers from this discussion that "the United States Supreme Court has already rejected Defendants [sic] First Amendment defense to Peturska's [sic] Title IX claim." (Pl.'s Reply Br. [Doc. #81] at p. 3.) Indeed, she goes so far as to posit that the *Grove City* case constitutes "more relevant ... precedent than the Third Circuit's Petruska decision." (*Id*. at p. 7.)

This argument is not convincing. The *Grove City College* case did not involve employment related decisions in the context of Title IX, much less application of the ministerial exception. Accordingly, we do not view the Third Circuit's ruling in *Petruska* – which directly addresses the issues before us – as less relevant precedent than the Supreme Court's decision in *Grove City College*.[6] In light of the context in which the *Grove City* case was decided, we simply cannot view it as controlling authority concerning the relevance or vitality of the ministerial exception in Title IX cases. *See Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir.1973) ("Questions 'neither brought to the attention of the Court nor ruled upon are not to be considered as having been so decided as to constitute precedents.'") (citing *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

Because she views the *Grove City College* case as foreclosing any application of the ministerial exception in Title IX cases, Plaintiff draws the corollary conclusion that Gannon is bound by the "reasonable and unambiguous prohibitions contained in Title

---

[6] Notwithstanding Petruska's characterization of the Third Circuit's ruling as having used "unnecessarily broad language," the circuit court was careful to emphasize the narrowness of its ruling: "[The ministerial exception] does not apply to *all* employment decisions by religious institutions, nor does it apply to *all* claims by ministers. It applies only to claims involving a religious institution's choice as to who will perform spiritual functions." *Petruska, supra*, at 306 n. 8.

IX" by virtue of the fact that it has accepted federal financial assistance. (Pl.'s Reply Br. [Doc. # 81] at p. 3.) Plaintiff posits that "if Gannon wants to discriminate on the basis of gender and retaliate against those who engage in protected activity under Title IX without consequence, it may do so by opting out of the federal financial assistance at issue and the strings attached to it." (*Id*.)

In essence, Plaintiff is contending that, by accepting federal funding, Gannon has waived its First Amendment right to choose its own "ministers" for purposes of Title IX. Notably, the Third Circuit considered, and rejected, a similar argument by Plaintiff in connection with her prior appeal:

> ...Gannon did not "waive" its First Amendment rights by representing itself as an "equal opportunity employer" or by accepting federal and state funds. A waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Id*. (citation omitted). Here neither Gannon's invocation of "equal employer" language nor its acceptance of funds constitutes a waiver of its First Amendment rights. By invoking the "equal opportunity" language, Gannon acknowledged only that it would comply with Title VII to the extent the statute applies to its employment decisions. It does not apply in this context. We thus agree that Gannon did not waive its right to raise the ministerial exception and we conclude that the District Court properly applied the exception to Petruska's Title VII claims.

462 F.3d at 309.[7]

We find Plaintiff's waiver argument (though she declines to characterize it as such) no more persuasive the second time around, notwithstanding her invocation of Title IX rather than Title VII as a basis for her gender discrimination and retaliation claims. Even as to Plaintiff's new theory, the circuit court's prior observation remains

---

[7] The Third Circuit has also recently held that a religious organization's acceptance of funding would not waive its right to partake of Title VII's statutory exemption applicable to religiously motivated employment decisions. *See LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 229-30 (3d Cir. 2007) (Jewish religious organization, by accepting United Way funds with the promise that it would not discriminate in the funded programs, did not thereby lose its protection under Section 702 of Title VII, 42 U.S.C. § 2000e-1(a)).

relevant: by accepting federal assistance for purposes of Title IX, Gannon acknowledged only that it would comply with the statute's mandates *insofar as the statute applies* to its employment decisions. Because we believe, based on the Third Circuit's prior ruling in this case, that Title IX can have no application in the context of Plaintiff's gender discrimination and retaliation claims, it follows that Gannon did not waive its First Amendment right to raise the ministerial exception doctrine as a defense to Plaintiff's Title IX claims. "Waiver" is "the intentional relinquishment or abandonment of a known right," *LeBoon*, 503 F.3d at 225 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)), and courts indulge every reasonable presumption against the waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. at 464; *Petruska*, 462 F.3d at 309. Here, the record does not support a finding of waiver.

      Plaintiff refers us to *Bob Jones University v. United States*, 461 U.S. 574 (1983), wherein two private Christian schools unsuccessfully argued that the government's decision to deny them charitable tax exempt status violated both the Free Exercise and Establishment Clauses of the First Amendment. The loss of tax exempt status in that case had resulted from the schools' prescription and enforcement of racially discriminatory admissions policies on religious grounds. In rejecting the schools' Free Exercise claim, the Supreme Court observed that "[n]ot all burdens on religion are unconstitutional.... The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." 461 U.S. at 603 (citation omitted). The Court found that the government's interest in eradicating racial discrimination in education was compelling and substantially outweighed the burden that was created by virtue of the schools' loss of tax-exempt status; further, the Court found that there were no less restrictive means available to achieve this governmental interest. *Id.* at 604. As for the schools' Establishment Clause challenge, the Supreme Court found that the IRS policy at issue had a "neutral, secular basis," and did not violate the Establishment Clause. *Id.* (citation omitted). The Court endorsed the Fourth Circuit's view that "the uniform application of the rule to all religiously operated schools

*avoids* the necessity for a potentially entangling inquiry into whether a racially restrictive practice is the result of sincere religious belief." *Id*. (citation omitted).

We find Plaintiff's reliance on *Bob Jones University* to be misplaced. First, *Bob Jones University* does not address any aspect of the ministerial exception (much less its applicability in the context of Title IX) and is therefore factually inapposite.

Second, the burden on religion that is implicated in this case is far more significant than the burden that was present in *Bob Jones*. In *Bob Jones*, the Court noted that the "[d]enial of tax benefits will inevitably have a substantial impact on the operation of private religious schools, but will not prevent those schools from observing their religious tenets." 461 U.S. at 603-04. Here, by contrast, Gannon's free exercise rights are much more directly infringed in that the application of Title IX to Plaintiff's employment discrimination case will effectively limit Gannon's right to determine for itself who will carry out ministerial functions on its behalf. As our court of appeals previously noted, the right of a religious organization to choose its own ministers is a fundamental aspect of its religious expression:

> Unlike an individual who can speak on her own behalf, ... the church as an institution must retain the corollary right to select its voice. A minister is not merely an employee of the church; she is the embodiment of its message. A minister serves as the church's public representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise. As the Fifth Circuit explained: "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose." *McClure*, 460 F.2d at 558-59. "Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." Id. at 559. [ ] Consequently, any restriction on the church's right to choose who will carry its spiritual message necessarily infringes upon its free exercise right to profess its beliefs.

462 F.3d at 306-07 (internal footnote omitted). Thus, unlike the denial of tax-exempt status, the application of Title IX to Gannon's employment decisions in this matter would clearly present a significant burden on the University's religious expression.

In sum, Plaintiff's arguments in support of her Title IX claims and against Defendants' assertion of the ministerial exception are unpersuasive. We conclude, based on the Third Circuit's previous ruling in this case, that Plaintiff's proposed Title IX

claims would be barred by the ministerial exception. Accordingly, because such claims could not withstand a motion made under Fed. R. Civ. P. 12(b)(6), they are futile and Plaintiff's motion for leave to add such claims will be denied.[8]

B.

Plaintiff also seeks leave to assert a claim for civil conspiracy. Under Pennsylvania law, civil conspiracy requires proof that two or more persons combined to commit an unlawful act or to commit an otherwise lawful act by unlawful means. *See Petruska*, 462 F.3d at 309 n. 13 (citing *Thompson Coal Co. v. Pike Coal*, 412 A.2d 466 (Pa. 1979)).[9] In her FAC, Plaintiff alleged that the underlying unlawful act was the violation of Title VII. In her SAC, she characterizes the underlying tort as the violation of Title IX.

Defendants assert, and we agree, that the proposed amendment should be denied as futile. The reasoning which the Third Circuit applied in dismissing Plaintiff's original civil conspiracy claim is likewise applicable to her new conspiracy claim:

> The civil conspiracy ... claim[] turn[s] on Petruska's ability to prove that Gannon's restructuring constituted an unlawful or tortious act. Because the First Amendment protects Gannon's right to restructure – regardless of its reason for doing so – we cannot consider whether the act was unlawful or tortious and, therefore, these claims must be dismissed.

---

[8] Defendants maintain that, alternatively, Plaintiffs' proposed Title IX claims are barred by the applicable statute of limitations. Given our conclusion that such claims are barred by the ministerial exception, we need not reach this statute of limitations defense.

[9] Plaintiff denies that her civil conspiracy claim is in the nature of a Pennsylvania state law claim, arguing instead that it is a federal claim. If that is true, it is unclear what provision of federal law she is invoking. She appears to rely on 42 U.S.C. § 1983, but Plaintiff clearly cannot state a viable claim under that provision because she would have to show that her rights were violated by a person acting under color of state law. *See generally* 42 U.S.C. § 1983. In any event, Plaintiff's conspiracy claim assumes that she can properly prosecute a claim against Defendants under Title IX. Because we have already found such a claim barred by the ministerial exception, her civil conspiracy claim premised upon that same alleged unlawful conduct must also fail.

462 F.3d at 309.

## IV.  CONCLUSION

Based upon the foregoing reasons, Plaintiff's motion for leave to amend her complaint will be denied with respect to Counts 1 through 3 of the Second Amended Complaint and granted with respect to Counts 4 and 5.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNETTE M. PETRUSKA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> GANNON UNIVERSITY, et al., ) <br> ) <br> Defendants. ) | Civil Action 1:04-cv-80 |

## O R D E R

AND NOW, *to wit*, this 31st day of March, 2008, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Leave to Amend Complaint [Doc. # 77] is DENIED in part and GRANTED in part as follows:

1. Said motion is DENIED with respect to Counts 1 through 3 of the Second Amended Complaint; and

2. Said motion is GRANTED with respect to Counts 4 and 5 of the Second Amended Complaint.

IT IS FURTHER ORDERED that Defendants shall file an answer to Counts 4 and 5 on or before April 14, 2008.


                                                             s/    Sean J. McLaughlin
                                                             SEAN J. McLAUGHLIN
                                                             United States District Judge

cm:   All counsel of record.