**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LYNETTE M. PETRUSKA,
    Plaintiff

v.

GANNON UNIVERSITY, *et al.,*
    Defendants

CA 1:04-cv-00080

Hon. Sean J. McLaughlin

Jury Trial Demanded

---

**ANSWER TO SECOND AMENDED COMPLAINT**

    AND NOW, come the Defendants, Gannon University, Bishop Donald W. Trautman, Monsignor David Rubino and Antoine Garibaldi, in their official capacities, by and through their attorneys, Elderkin Martin Kelley & Messina ("Gannon"), and Bishop Donald W. Trautman ("Trautman"), Rev. Monsignor David Rubino ("Rubino"), and Antoine Garibaldi ("Garibaldi"), in their individual capacities, by and through their attorneys, Quinn Buseck Leemhuis Toohey & Kroto, Inc. and file this Answer to the second amended complaint of the Plaintiff, of which the following is a statement:

    1.    Admitted in part and denied in part.  It is admitted that Plaintiff is a former employee of Gannon University, and that she was originally hired on or about July 16, 1997 as the Director of the Center for Social Concerns.  It is further admitted that on or about June 1, 1999, she was promoted to the position of University chaplain, and that she was the first female appointed to that position.  It is denied that the position of chaplain was a "vice President level position" or that it headed a "division" of the university.  It is admitted that the chaplain served on the President's staff and the President's council.  It is admitted that at all times relevant to the instant action, Plaintiff was a resident of Erie County, Pennsylvania.  By way of further answer, Defendants do not know what Plaintiff means when she alleges that the chaplain was "a resource

person for the Board of Trustees."  That allegation, along with all other inferences and any allegations not specifically addressed above, is/are denied.

2.    Admitted.

3.    The allegations set forth in paragraph 3 of Plaintiff's second amended complaint relate to individuals no longer a party to this action.  No response, therefore, is required.

4.    Admitted in part and denied in part.  It is specifically admitted that Bishop Donald W. Trautman is the Bishop of the Roman Catholic Diocese of Erie and, as Bishop, is the chairperson of Gannon's Board of Trustees.  It is specifically denied that Trautman is sued in his individual and official capacities, inasmuch as these terms have no meaning relative to any cause of action presently before the Court.

5.    Admitted in part and denied in part.  It is admitted that Rubino is the former president of Gannon, and that he served in that capacity from 1991 until May 2000.  It is admitted that Rubino resigned in May of 2000, but it is denied that his resignation was forced "because of acts of sexual misconduct directed against female subordinates."  Although it is admitted that Rubino appointed Plaintiff to the position of chaplain, it is specifically denied that he did so "with the advice and consent of Trautman."  It is specifically denied that Rubino is sued in his individual and his former official capacities, inasmuch as these terms have no meaning relative to any cause of action presently before the Court.

6.    Admitted in part and denied in part.  It is admitted that Garibaldi is the current president of Gannon, having assumed such position effective July 1, 2001.  It is denied that he demoted Plaintiff at any time, and further denied that he ever

discriminated against her because of her gender. It is specifically denied that Garibaldi is sued in his individual and official capacities, inasmuch as these terms have no meaning relative to any cause of action presently before the Court.  The remaining allegations in paragraph 6 of Plaintiff's second amended complaint are likewise denied.

7.    The allegations set forth in paragraph 7 of Plaintiff's second amended complaint relate to an individual no longer a party to this action.  No response, therefore, is required.  To the extent a response is required, it is admitted that Reverend Nicholas Rouch is the Vice President for Mission and Ministry of Gannon.  The remaining allegations in paragraph 7 are denied.

8.    The allegations set forth in paragraph 8 of Plaintiff's second amended complaint constitute legal conclusions to which no response is required.  To the extent response may be required, these allegations are denied, and strict proof of same is hereby demanded.

9.    The allegations set forth in paragraph 9 of Plaintiff's second amended complaint constitute legal conclusions to which no response is required.  To the extent a response may be required, these allegations are denied, and strict proof of same is hereby demanded.

10.    The allegations set forth in paragraph 10 of Plaintiff's second amended complaint constitute legal conclusions to which no response is required.  By way of further answer, the averments set forth in the first two sentences of this paragraph relate specifically and solely to claims that have been previously dismissed by this Court.  Again, no response is required.

11.    Admitted.

12.    Admitted.

13.    It is admitted that Plaintiff met with Cline in June 1997.  After reasonable investigation, however, the Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the remaining allegations set forth in paragraph 13 of Plaintiff's second amended complaint.  These allegations are therefore denied, and strict proof is hereby demanded.

14.    Denied as stated.   It is admitted that Gannon includes an "equal opportunity employer" statement in advertisements placed for the purpose of attracting applicants for employment with the university.  To the extent alleged by inference or otherwise, it is denied that any such practice denies Gannon the right to make employment decisions regarding "ministerial" employees in accordance with applicable law.

15.    It is admitted that, when Plaintiff was first hired in 1997, Father Nicholas Rouch was the chaplain of Gannon.  It is further admitted that he shortly thereafter left that position to begin a period of study in Rome, Italy.  It is further admitted that, upon his departure, an interim chaplain, Reverend Ed Lohse was appointed.  It is specifically denied that Father Rouch was promised that he would return to Gannon as Chaplain when his studies were completed and that Father Rouch was unwilling to return from Rome to fill the chaplain position when Father Lohse resigned in June of 1999.

16.    Admitted in part and denied in part.  It is specifically admitted that Plaintiff was appointed chaplain of Gannon by Rubino effective June 1, 1999.  It is specifically denied that this was a "permanent" appointment, or that the appointment was made with

the advice and consent of Trautman.  It is admitted that Plaintiff was the first female chaplain of Gannon University.  The remaining allegations of paragraph 16 are denied.

17.     It is admitted that prior to the date of Plaintiff's appointment as chaplain, she and Rubino met in his office.  After reasonable investigation, the Defendants lack sufficient knowledge so as to form a reasonable belief as to the truth or veracity of the allegations regarding the number of meetings, who was present at the meetings, or specifically what was said at the meetings.  It is Rubino's recollection that he did tell her that her tenure as chaplain would be based upon her performance, but that he could not speak for anyone who might serve as Gannon's president after him.  The Defendants likewise lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the allegation regarding the reasons why Plaintiff purportedly sought assurances from Rubino regarding her employment as chaplain.  These allegations (including all allegations set forth in 17 (a) – (d) are therefore denied, and strict proof is demanded.  It is specifically denied that Gannon had a custom or practice of gender-based discrimination.

18.     Denied.  It is specifically denied that Plaintiff was offered, or accepted, a "permanent" appointment as chaplain.  The remaining allegations set forth in paragraph 18 of Plaintiff's second amended complaint constitute legal conclusions to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

19.     It is admitted that Rubino and Sister Mary Fromknecht discussed Plaintiff's position, including salary and benefits, and the fact that Plaintiff's tenure as chaplain would be based on her performance.  After reasonable investigation, the

Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the remaining allegations set forth in paragraph 19 of Plaintiff's second amended complaint.  These allegations are therefore denied, and strict proof of the same is hereby demanded.

20.    It is admitted that Plaintiff was chaplain in March of 2000.  It is denied that her appointment to the position was "based upon Rubino's representation that she would not be replaced when a suitable male became available for the position."  It is admitted that Rubino took a leave of absence as president of Gannon after allegations surfaced regarding an inappropriate relationship.  It is denied that the leave of absence was "forced."

21.    It is admitted that after Rubino began his leave of absence, a female Gannon employee alleged that he had created what she perceived as a hostile work environment.  The complaint was resolved without an admission of liability or wrongdoing on the part of either Gannon or Rubino.  The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the allegation that Plaintiff was "instrumental" in bringing this claim to Gannon's attention.  These allegations are therefore denied, and strict proof is hereby demanded.

22.    Admitted in part and denied in part.  It is admitted that Rubino resigned as president of Gannon in May of 2000, and that the resignation was related to the allegations that Rubino was engaged in an inappropriate relationship.  The remaining allegations of paragraph 22 are denied.

23.    It is admitted that in May of 2000 Ostrowski was appointed as acting president of Gannon.  It is denied that his status as "acting president" had any effect on his ability to apply for the position of president.

24.    Denied as stated.  It is admitted that Ostrowski, Trautman and Rouch met on several occasions in July of 2000, however it is averred that Rouch was not present at all of such meetings.  It is admitted that Trautman informed Ostrowski that since Rubino was no longer at Gannon, he felt it necessary that a priest be present at Gannon in a high level administrative position and that he felt Rouch, as Vice President for Mission, would fulfill that need.  It is specifically denied that Trautman instructed Ostrowski to remove Plaintiff as chaplain.  The remaining allegations of paragraph 24 are denied.

25.    The allegations set forth in paragraph 25 of Plaintiff's second amended complaint constitute legal conclusions to which no response is required.  To the extent a response may be required, these allegations are denied, and strict proof of the same is hereby demanded.

26.    The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the allegations set forth in paragraph 26 of Plaintiff's second amended complaint.  These allegations are therefore denied, and strict proof is hereby demanded.

27.    Admitted in part and denied in part.  It is admitted that Plaintiff met with Trautman.  The remaining allegations of paragraph 27 are denied.

28.    It is admitted that on or about October 2, 2000, Ostrowski gave Plaintiff a three (3) year appointment for the chaplain position.  It is specifically denied that vice

presidents of Gannon are given three (3) year appointments.  It is further averred that

Plaintiff's employment, however, remained "at-will."  To the extent alleged by inference

in the remaining allegations of paragraph 28, it is specifically denied that Gannon's

Policies and Procedure Manual constitutes a contract, either on its own or by way of

reference or incorporation into  Plaintiff's appointment as chaplain, or that the chaplain

serves as the head of a "Chaplain's Division."  It is admitted that at the time, the

chaplain was a member of the President's Staff.

29.    It is admitted that the individuals who held the positions of Provost,

Executive Director of Admissions, and Chaplain in January of 2001 are no longer

employed by Gannon.  To the extent that it is alleged by inference or otherwise, it is

specifically denied that any of these individuals was terminated or otherwise separated

from Gannon on the basis of gender.  The Defendants lack sufficient knowledge or

information so as to form a reasonable belief as to the truth or veracity of the remaining

allegations set forth in paragraph 29 of Plaintiff's second amended complaint.  These

allegations are therefore denied, and strict proof is hereby demanded.

30.    The Defendants lack sufficient knowledge or information so as to form a

reasonable belief as to the truth or veracity of the allegations set forth in paragraph 30

of Plaintiff's second amended complaint.  These allegations are therefore denied, and

strict proof is hereby demanded.

31.    Denied.

32.    Admitted.

33.    Denied as stated.  In further answer, it is admitted that Father Rouch, in

his capacity of Vice President for Mission, offered Garibaldi his opinion that the person

fulfilling the role of chaplain of Gannon, a Catholic university, should be a Catholic priest.

34.    Denied as stated.  In further answer, Plaintiff continued to serve as chaplain as usual and she met individually with Garibaldi and as a member of President's Staff.  In further answer, Garibaldi directed that Plaintiff collaborate with Father Rouch, the Vice President for Mission and Ministry, given their respective roles. In further answer, it is denied that Garibaldi did not consult with Plaintiff on issues impacting the Catholic identity of Gannon once he became president.

35.    Denied as stated.  In further answer, it is admitted that Garibaldi informed Plaintiff that he expected to be informed and consulted before any major decisions were made and announced, as he expected of all other staff members.  In further answer, as a result of the September 11, 2001 terrorist attack on the World Trade Center towers, there were many decisions made by Garibaldi in consultation with the respective vice presidents and division directors of Gannon and it was entirely appropriate for him to expect the chaplain's office to similarly coordinate matters.

36.    Denied as stated.  In further answer, Garibaldi does not recall the specific duration of his meeting with Plaintiff regarding her six-month evaluation, or that it was substantively different from any of his six-month evaluations of other vice presidents.

37.    Admitted in part and denied in part.  It is admitted that the matters alleged in paragraph 37 of Plaintiff's second amended complaint are entirely unrelated to the claims now before the Court.  It is admitted that, sometime in early April 2002, Plaintiff met with Trautman to discuss several matters, and that she raised a question regarding

a retired priest against whom no formal complaints or criminal charges had, at that time, been brought.  The remaining allegations set forth in paragraph 37 are denied.

38.    Denied as stated.  It is admitted that Plaintiff offered her opinion that she felt it would be inappropriate for Rubino to be present at Garibaldi's inauguration celebration.  It is further admitted that when Plaintiff asserted that Rubino had a history of harassing females, Rubino told her that he would meet anyone on the steps of a courthouse who came forward with such allegations.  The remaining allegations of paragraph 38 are denied.

39.    The Defendants are unaware of what Plaintiff means when she uses the phrase "the situation at Gannon."  This allegation is therefore denied, and strict proof is hereby demanded. .  In further answer, it is admitted that Garibaldi met with Plaintiff in April of 2002 to discuss with her introductory comments she made at a faculty awards convocation.  Plaintiff's role at the convocation was to give the prayer, but she also used the occasion to make informal remarks that Garibaldi felt were inappropriate and he advised her so in the meeting. The remaining allegations set forth in paragraph 39 are denied.

40.    Denied as stated.  In further answer, it is admitted that Garibaldi again informed Plaintiff that he believed that, at various events, she had made informal remarks that he believed were inappropriate for her role as chaplain.  It is denied that Garibaldi made any reference to Plaintiff being the first female chaplain at Gannon.  The remaining allegations of paragraph 40 are denied.

41.    Admitted in part and denied in part.  It is admitted that Plaintiff was given a positive evaluation, that a copy of the evaluation is attached to her second amended

complaint as Exhibit 1, and that it was repeatedly recommended to her that she work more closely with the Vice President for Mission and Ministry.  All other allegations and inferences set forth in paragraph 41 of Plaintiff's second amended complaint are denied.

42.     Admitted in part and denied in part.  It is admitted that Plaintiff was given her annual appointment notice in accordance with Gannon policies and procedures.  It is denied that Garibaldi "failed" to fulfill any obligation he had to Plaintiff in connection with providing her annual appointment notice.

43.     Denied as stated.  In further answer, it is admitted that Garibaldi informed Plaintiff that he wanted a Mass included as part of the Freshman Academic Convocation   Plaintiff informed Garibaldi that she did not support his idea of incorporating a Mass.  In further answer, the planning committee included Plaintiff, as well as staff members from student development and academic affairs and other departments.  Plaintiff was regularly consulted, was member of the planning committee, and participated in planning the convocation.  The remaining allegations of paragraph 43 are denied.

44.     It is admitted that on or about August 21, 2002 Garibaldi told Plaintiff that he had decided to do some restructuring.  The Plaintiff was told that she would remain chaplain, but the chaplain would no longer be a member of the President's Staff or the President's Council.  At the same time, Garibaldi also removed Richard Sukitsch, the Director of Institutional Research, from the President's Staff and President's Council.  Garibaldi also informed Plaintiff that the chaplain position would report to the Vice President for Mission and Ministry. There was no "Chaplain's Division" at Gannon at any time relevant to this action, only the Chaplain's Office.   The remaining allegations

of paragraph 44 constitute legal conclusions, to which no response is required.  To the

extent a response may be required, the remaining allegations are denied, and strict

proof is hereby demanded.

45.    Denied as stated.  In further answer, Garibaldi determined the

restructuring based upon his own knowledge and research of organizational structures

related to mission and ministry at Catholic and other religious institutions, without

influence from Trautman or Rouch.  It is admitted that in 2000, prior to Garibaldi's hiring,

Middle States recommended that Gannon develop a job description for the Vice

President for Mission and Ministry and explain the relationship between the Vice

President for Mission and Ministry and the chaplain.  The remaining allegations of

paragraph 45 are denied.

46.    The allegations of paragraph 46 constitute legal conclusions, to which no

response is required.  To the extent that a response may be required, these allegations

are denied, and strict proof is hereby demanded.

47.    Admitted.

48.    Denied as stated.  It is specifically denied that Plaintiff was demoted from

her position as chaplain.  It is admitted that as a result of the restructuring, the chaplain

position reported to the Vice President for Mission and Ministry, rather than the

President, and the chaplain was no longer a member of the President's Staff or

President's Council.  By way of further answer, the Defendants lack sufficient

knowledge or information so as to form a reasonable belief as to the truth or veracity

regarding the allegation that Plaintiff suffered humiliation and embarrassment as a result

of any statement by Gannon.  These allegations are therefore denied, and strict proof is hereby demanded.

49.    It is admitted that on September 30, 2002 Father Rouch called Plaintiff and stated that he wanted to talk to her about the restructuring.  It is further admitted that Plaintiff refused to meet with Father Rouch, and that Plaintiff indicated that she wanted to meet with Garibaldi to discuss the matter.  It is specifically denied, however, that the Defendants engaged, at any time, in discrimination against Plaintiff because of her gender.

50.    It is admitted that Garibaldi did not respond to Plaintiff's request for a meeting.  In further answer, as president of Gannon, Garibaldi was within his rights to insist that Plaintiff follow his directives and meet with Father Rouch.

51.    Denied as stated.  It is admitted that Trautman spoke with Sister Ricarda Vincent regarding Plaintiff and what he perceived to be her recalcitrant behavior as an obedient servant, in accordance with the rules of her Order.

52.    The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity regarding the allegations set forth in paragraph 52 of Plaintiff's second amended complaint.  These allegations are therefore denied, and strict proof is hereby demanded.

53.    Admitted.  By way of further answer, this was at least the second time that Plaintiff refused to follow the unequivocal instructions of both her immediate supervisor and the president of the University.

54.    Denied as stated.  By way of further answer, Garibaldi advised Plaintiff that if she continued to refuse to report to Father Rouch, Gannon would take

appropriate action.    In further answer, Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity of the allegation in the last sentence of paragraph 54. This allegation is therefore denied, and strict proof is hereby demanded.

55.    The allegations of paragraph 55 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

56.    The allegations of paragraph 56 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

57.    It is admitted that Plaintiff tendered her two week notice on or about October 14, 2002.  The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity regarding the allegations pertaining to Plaintiff's motives for quitting her job with Gannon.  These allegations are therefore denied, and strict proof is hereby demanded.  It is specifically denied that any action was taken with regard to Plaintiff in order to "cover-up" anything.

58.    It is admitted that Father Rouch and Mr. Cline met with Plaintiff on October 15, 2002, and informed her that Gannon would accept her resignation, effective immediately. It is further admitted that Father Rouch informed Plaintiff that her presence on campus was no longer necessary and that she could be on campus only with permission and her contact with students would be limited.  The remaining allegations in paragraph 58 are denied.

59.    The allegations set forth in paragraph 59 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court.  No response is therefore required.  To the extent a response is required, Plaintiff was permitted to review her e-mail files to determine if there was anything of a personal nature on her e-mail account.  In further answer, Gannon handled Plaintiff's access to her e-mail and the university's computer network after she resigned the same as it does with other employees of similar stature who leave the employ of the university.

60.    The allegations set forth in paragraph 60 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court.  No response is therefore required.  By way of further answer, it is specifically denied that Plaintiff was terminated by Gannon.  To the contrary, she voluntarily quit, and had no necessity to her compelling reason to do so.

61.    Denied as stated.  Although it is admitted that Plaintiff received a positive evaluation from Garibaldi, her conduct toward the end of her tenure – especially as it relates to her refusal to follow Garibaldi's instructions – was unacceptable. The remaining allegations set forth in paragraph 61 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court.  No response is therefore required.

62.    Denied as stated.  In further answer, it is admitted that Father Rouch has expressed his opinion that the chaplain of Gannon, a Catholic university, should be a Catholic priest.

63.    It is specifically denied that Plaintiff was discriminated against on the basis of her gender or any other basis by any of the Defendants. The remaining allegations of

paragraph 63 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

64.     The allegations of paragraph 64 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

## Count I

65-71. The allegations set forth in paragraphs 65-71 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court. No response is therefore required.

## Count II

72-81. The allegations set forth in paragraphs 72-81 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court. No response is therefore required.

## Count III

82-92. The allegations set forth in paragraphs 82-92 of Plaintiff's second amended complaint relate to matters that have been dismissed by this Honorable Court. No response is therefore required.

## Count IV
## Fraudulent Misrepresentation
## Against Gannon, Rubino and Trautman

93.     The Defendants' responses to paragraphs 1 through 93 are hereby incorporated by reference, as if more fully set forth herein.

94.     Defendants incorporate by reference herein their response in paragraphs 12 and 13 above.

95.     Admitted.

96.     Defendants lack sufficient knowledge or information to form a reasonable belief as to the truth or veracity of this allegation.  This allegation is therefore denied, and strict proof is hereby demanded.

97.     Defendants lack sufficient knowledge or information to form a reasonable belief as to the truth or veracity of this allegation.  This allegation is therefore denied, and strict proof is hereby demanded.

98.     Defendants incorporate by reference herein their response in paragraph 14 above.

99.     Defendants lack sufficient knowledge or information to form a reasonable belief as to the truth or veracity of this allegation.  This allegation is therefore denied, and strict proof is hereby demanded.

100.    Defendants incorporate by reference herein their response in paragraph 17 above.

101.    Defendants incorporate by reference herein their response in paragraph 17 above.

102.    Defendants incorporate by reference herein their response in paragraph 19 above.

103.    Defendants incorporate by reference herein their response in paragraph 19 above.

104.   The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity regarding the allegations set forth in paragraph 104 of Plaintiff's second amended complaint.  These allegations are therefore denied, and strict proof is hereby demanded.

105.   The allegations of paragraph 105 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

106.   The allegations of paragraph 106 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

107.   The allegations of paragraph 107 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

108.   The allegations of paragraph 108 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

109.   The allegations of paragraph 109 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

110.   The allegations of paragraph 110 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

111.    The allegations of paragraph 111 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

WHEREFORE, Defendants Gannon University, Bishop Donald W. Trautman and Rev. Monsignor David Rubino respectfully request that this Honorable Court grant judgment in their favor and against the Plaintiff, Lynette M. Petruska, on Count IV of the second amended complaint, together with costs, counsel fees and such other relief as this Honorable Court shall  deem necessary and just.

<u>**Count V**</u>
<u>**Breach of Contract**</u>
<u>**Against Gannon and Garibaldi**</u>

112.    The Defendants' responses to paragraphs 1 through 111 are hereby incorporated by reference, as if more fully set forth herein.

113.    Admitted that, on July 1, 1999, Petruska assumed the position of Chaplain for Gannon.  It is denied that she entered into a contract between herself and Rubino.

114.    Admitted in part and denied in part.  It is admitted that in October of 2000, Plaintiff was given a three (3) year appointment notice as chaplain by Ostrowski.  It is further admitted that the appointment notice was signed by Petruska and by Ostrowski. In further answer, Plaintiff's annual appointment notices thereafter were signed by Garibaldi. The Defendants lack sufficient knowledge or information so as to form a reasonable belief as to the truth or veracity regarding the allegations regarding Plaintiff's request for a three year appointment, or the reasons for such request.  These allegations are therefore denied, and strict proof is hereby demanded. It is specifically denied that other vice presidents at Gannon have multi-year appointments.

115.    The allegations of paragraph 115 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

116.    The allegations of paragraph 116 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

117.    The allegations of paragraph 117 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

118.    The allegations of paragraph 118 constitute legal conclusions, to which no response is required.  To the extent that a response may be required, these allegations are denied, and strict proof is hereby demanded.

WHEREFORE,  Defendants Gannon University and Antoine Garibaldi respectfully request that this Honorable Court grant judgment in their favor and against the Plaintiff, Lynette M. Petruska, on Count V of the second amended complaint, together with costs, counsel fees and such other relief as this Honorable Court shall deem necessary and just.

## **Affirmative Defenses**

119.    The Defendants' responses to paragraphs 1 through 118 are hereby incorporated by reference, as if more fully set forth herein.

120.    The Plaintiff has failed to state any claims upon which relief might properly be granted.

121.    The Plaintiff has failed to state any claims upon which punitive damages might properly be granted.

122.    The Plaintiff has failed to state any claims upon which counsel fees might properly be granted.

123.    The Plaintiff has failed to state any claims upon which costs might properly be granted.

124.    The Plaintiff's claims for fraudulent misrepresentation are barred by the "gist of the action" doctrine.

125.    The Plaintiff's claims for fraudulent misrepresentation and related damages are barred by the exclusivity provision of Pennsylvania's Worker's Compensation Act.

126.    The Plaintiff's claims against Trautman, Rubino and Garibaldi, individually, are barred by the doctrine of disclosed agency.

127.    The Plaintiff's claims in Count IV and V are barred by the ministerial exception doctrine.

128.    The Plaintiff's claims in Counts IV and V are barred, in whole or in part, by the applicable statute(s) of limitations.

129.    This Honorable Court lacks subject matter jurisdiction over Plaintiff's claims in Counts IV and V.

WHEREFORE, the Defendants, Gannon University, Bishop Donald W. Trautman, Rev. Monsignor David Rubino, and Antoine Garibaldi respectfully request that this Honorable Court grant judgment in their favor and against the Plaintiff, Lynette

M. Petruska, together with costs, counsel fees and such other relief as this Honorable

Court shall  deem necessary and just.

Respectfully submitted,

ELDERKIN MARTIN KELLY & MESSINA

By:  /s/Evan C. Rudert
     Evan C. Rudert
     PA Id. No. 52787
     150 East 8th Street
     Erie, Pennsylvania  16501
     Telephone: 814-456-4000
     Facsimile: 814-454-7411
     Counsel for Defendants, Gannon
     University, Bishop Donald W. Trautman,
     Monsignor David Rubino and Antoine
     Garibaldi, in their official capacities

QUINN, BUSECK, LEEMHUIS, TOOHEY &
KROTO, INC.

BY:   /s/Arthur D. Martinucci
     Arthur D. Martinucci
     PA Id. No. 63699
     2222 West Grandview Boulevard
     Erie, Pennsylvania  16506-4508
     Telephone: 814-833-2222
     Facsimile: 814-833-6753
     Counsel for Defendants, Bishop Donald
     W. Trautman, Monsignor David Rubino
     and Antoine Garibaldi, in their individual
     capacities