**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LYNETTE M. PETRUSKA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:04-cv-00080 Erie |
| | ) | |
| v. | ) | Judge Sean J. McLaughlin |
| | ) | |
| | ) | Electronically Filed |
| GANNON UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS BISHOP DONALD W. TRAUTMAN'S,**
**MONSIGNOR DAVID RUBINO'S, AND DR. ANTOINE GARIBALDI'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**

This case, as originally filed, was mainly an alleged employment discrimination case against Gannon University and a number of University administrators in their official and individual capacities. Based on prior legal rulings, Plaintiff has only two remaining claims in her Second Amended Complaint— one for fraudulent misrepresentation (Count IV) and one for breach of contract (Count V). Only the fraud claim remains pending against Bishop Donald W. Trautman and Monsignor David Rubino, in their individual capacities[1]; and only the breach of contract action remains pending against Dr. Antoine Garibaldi. Both of these claims are deficient as a matter of law and should be dismissed on a number of grounds.

*First*, Plaintiff's fraudulent misrepresentation claim is barred by the two-year statute of limitations, as Plaintiff concedes in her Second Amended Complaint that she discovered the alleged fraud almost four years before she filed her claim;

---

[1] Neither of Plaintiff's remaining claims raises any allegations against Rev. Nicholas Rouch, the only other clergy defendant originally sued in his individual capacity. Accordingly, Rev. Rouch was dismissed from this case as of March 31, 2008, and he is no longer a party to this action.

**Second**, Plaintiff's fraud claim is completely intertwined with her breach of contract claim and therefore is barred by the gist of the action doctrine;

**Third**, Plaintiff has failed to allege—and could not allege—that she relied to her detriment or suffered any direct and immediate pecuniary damages from the alleged fraud;

**Fourth**, Plaintiff has not alleged that Bishop Trautman made any representations that could be the basis of a fraud claim against him in his individual capacity;

**Fifth**, Plaintiff has failed to allege that Msgr. Rubino, in his individual capacity, damaged her;

**Sixth**, Plaintiff has failed to allege that Dr. Garibaldi, in his individual capacity, entered into a contract with her and any such claims are further barred under the doctrine of "disclosed agency";

**Seventh**, Plaintiff's claim for attorneys' fees must be dismissed because she has alleged no legal basis for such an award.

For these reasons, as more fully explained below, Plaintiff has failed to state a viable claim of fraud or breach of contract against the individual defendants. This Court should therefore enter judgment on the pleadings, dismissing Plaintiff's only remaining claims against Bishop Trautman, Msgr. Rubino, and Dr. Garibaldi.

## BRIEF BACKGROUND

Plaintiff filed her Original Complaint on March 11, 2004 and a First Amended Complaint on May 13, 2004, raising Title VII sex discrimination and retaliation claims, as well as various state law claims, including fraud and breach of contract. [Dkt. 49] Defendants filed motions to dismiss based on the First Amendment ministerial exception, and on December 27, 2004, this Court granted the motions, dismissing the entire case. [Dkt. 68] On appeal, the Third Circuit affirmed the Court's dismissal of the majority of Plaintiff's claims, but reversed in part, holding

that Plaintiff's contract claim did not necessarily implicate Defendants' First Amendment rights. The Third Circuit also allowed that a fraud claim did not necessarily implicate the First Amendment, but affirmed the Court's dismissal of that claim as it held that Plaintiff had failed to allege a fraud claim with the requisite particularly.  462 F.3d 294 (3d Cir. 2006).

On remand, Plaintiff sought to amend her complaint a second time.  She alleged claims for discrimination and retaliation under Title IX, as well as state law fraud and contract claims. On March 31, 2008, this Court allowed Plaintiff to file her Second Amended Complaint, but ordered that only the fraud and breach of contract claims were operative.  [Dkt. 85]. Accordingly, Plaintiff's Count IV (fraudulent misrepresentation) and Count V (breach of contract) are the only remaining claims, with only the fraud claim pending against Bishop Trautman and Msgr. Rubino, and only the breach of contract claim pending against Dr. Garibaldi.

## STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings should be granted if Plaintiff fails to state a claim upon which relief can be granted.  *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Smith v. Hewitt*, Civ. No. 07-35 Erie, 2008 WL 686903, 2 (W.D. Pa. Mar. 10, 2008) (McLaughlin, J.).  The Court "must accept as true all of the factual allegations contained in the complaint."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002).  But, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Where a plaintiff, moreover, "chooses to plead particulars, and [the particulars] show that he has no claim, then he is out of luck—he has pleaded himself out of court."  *Gagliardi v. Clark*, No. 06-20, 2006 WL 2847409, *4 (W.D. Pa. Sept. 28, 2006).

## ARGUMENT

**A.     PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM IS BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.**

Plaintiff's fraudulent misrepresentation claim is barred by the statute of limitations.  In Pennsylvania, the statute of limitations for fraud is two years.  42 Pa. C.S.A. § 5524(7).  This period begins to run from the time the plaintiff discovers, or reasonably should have discovered, the fraud.  *Bhatla v. Resort Dev. Corp.*, 720 F. Supp. 501, 512-13 (W.D. Pa.  1989).  In this case, as Plaintiff concedes that she had actual knowledge of the alleged fraudulent misrepresentations almost four years before she filed this action, her claim is untimely as a matter of law.

Plaintiff claims that the alleged misrepresentations at issue occurred at a meeting in April 1999 when Msgr. Rubino allegedly told her that "she would not be replaced when Rouch returned from Rome" and that "her tenure as Chaplain would be based upon her job performance, not her gender."  Compl. ¶ 101.  She further alleges that at that same time (April 1999) Msgr. Rubino represented to Sr. Mary Fromknecht (then-President of Plaintiff's order) that "Plaintiff would remain in this leadership position 'as long as she was a valid role model in the position.'"  Compl. ¶ 103.  Plaintiff contends that these "representations set forth above were material representations made to induce Plaintiff to accept . . . the position of Chaplain."  Compl. ¶ 105.

According to her own Complaint, Plaintiff discovered as early as July 2000 that the representations upon which she had allegedly relied were false.  Specifically:

- In Paragraph 26, Plaintiff alleges that on July 28, 2000, Dr. Thomas Ostrowski informed her that the decision had been made to remove her as head of the Chaplain's Division and "that he could delay the implementation of this decision, [but] he could not prevent it."  Compl. ¶ 26.

- Plaintiff admits that she was explicitly told in July 2000 that Rouch was to be appointed to a new vice president position, that the Chaplain's Office would be placed under his leadership, and "that this action was being taken against Plaintiff on the basis of her gender, female." *Id.*

- Plaintiff further alleges that "[i]n September 2000, *after Plaintiff had learned of the intentions* . . . to remove her as Chaplain or replace her as head of the Chaplain's Division, Plaintiff requested a multi-year contract as Chaplain" to protect herself. Compl. ¶ 114 (emphasis added).

- According to Plaintiff, between March and May 2001, Ostrowski "*made it clear to Plaintiff* that Trautman and Rouch would never let her remain Chaplain at Gannon because of her gender . . . ." Compl. ¶ 30 (emphasis added).

- Plaintiff concedes that "[a]fter Garibaldi become President [in July 2001], it *became apparent* that Plaintiff would not be permitted to function as Chaplain of Gannon." Compl. ¶ 34 (emphasis added).

- By October 2002, Plaintiff admits that she "*had known for two years* that Trautman and Rouch wanted to remove her from leadership and that they had found an ally in Garibaldi to effect their discriminatory and retaliatory plan . . . ." Compl. ¶ 55 (emphasis added).

Based on Plaintiff's own allegations, her fraud claim is time barred because the statute of limitations began running, at the latest, in July 2000 when she unquestionably knew about the alleged fraud. Despite her awareness of the alleged misstatements, Plaintiff nonetheless waited almost four years before filing suit on March 11, 2004—nearly a two years after the two-year statute of limitations had run. Because the face of Plaintiff's Complaint establishes that the statute of limitations on her fraud claim had expired before she filed suit, this Court should grant Defendants' motion for judgment on the pleadings and dismiss that claim with prejudice. *See Bhatla*, 720 F. Supp. at 512-13 (dismissing fraud claim on statute of limitations grounds where complaint demonstrated that plaintiffs had learned of the fraud, and their claim thus accrued, more than two years before they filed suit).

**B.    PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIM IS DUPLICATIVE OF HER BREACH OF CONTRACT CLAIM AND IS BARRED BY THE GIST OF THE ACTION DOCTRINE.**

Plaintiff's fraud claim, in fact, is nothing more than a repackaged breach of contract claim that is barred by the "gist of the action" doctrine. The gist of the action doctrine prohibits a plaintiff from bringing a fraudulent misrepresentation claim based on the breach of contractual duties. *See Williams v. Hilton Group*, 261 F. Supp. 2d 324, 329-30 (W.D. Pa. 2003), *aff'd by* 93 Fed. Appx. 394 (3d Cir. 2004); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650-51 (E.D. Pa. 2002) ("[B]reach of contract claim cannot be 'bootstrapped' into a fraud claim by adding the words 'fraudulently induced' or alleging the contracting parties never intended to perform."). The doctrine applies to bar a fraudulent inducement claim if the plaintiff claims that the alleged pre-contractual misrepresentations were also incorporated into the terms of the resulting contract. *Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. Civ. A. 02-7830, 2003 WL 735098, *3-5 (E.D. Pa. Feb. 28, 2003). As Plaintiff's fraud claim is based on the same alleged breach of contractual duties, this Court should grant Defendants' motion for judgment on the pleadings.

Plaintiff's fraud claim has an identical factual predicate to her breach of contract action. Plaintiff alleges that Defendants fraudulently represented that they did not intend to replace her as head of the Chaplain's Division and that her tenure "would be based upon her job performance, not her gender." Compl. ¶ 101. She further alleges that "Plaintiff was injured as a result of her reliance upon the representations set forth above in that she was, in fact, removed from her position of leadership based upon her gender rather than her job performance . . . ." Compl. ¶ 110. In parallel fashion, Plaintiff alleges that Defendants Gannon University and Garibaldi breached *contractual duties* by removing her from her leadership position as head of the Chaplain's Division and a member of the President's Staff, and that "Plaintiff was damaged as a result of this breach of contract in that she was, in fact, removed from her position of

leadership based upon her gender rather than her job performance . . . ." Compl. ¶¶ 116-17. Although Plaintiff contends that Msgr. Rubino promised in 1999 that she would not be removed, she also contends that the promise not to remove her became a material term in her employment contract. Accordingly, the gist of the action sounds in contract, and Plaintiff' fraud claim should be dismissed because it is completely intertwined with her breach of contract claim. *See, e.g.*, *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, No. Civ. A. 01-1083, 2002 WL 126634, *6 (E.D. Pa. Jan. 31, 2002) (dismissing on 12(b)(6) motion misrepresentation claims that were "completely intertwined" with contract claims).

## C.    PLAINTIFF HAS FAILED TO ALLEGE THAT SHE RELIED TO HER DETRIMENT OR SUFFERED ANY DIRECT AND IMMEDIATE PECUNIARY LOSS RESULTING FROM THE ALLEGED FRAUD.

Plaintiff has failed to state a claim for fraud because her Complaint identifies no loss attributable to the alleged misrepresentations. Under Pennsylvania law, a plaintiff can only recover "pecuniary losses" that "were immediately and proximately caused by the fraud." *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 410 (Pa. Super. Ct. 1985). Here, Plaintiff alleges no such losses.

Plaintiff admits in her Complaint that she did not leave or forego an alternative, beneficial employment opportunity in reliance on the alleged misrepresentations. In fact, she specifically admits that the available alternative was a position with the Diocese, which she turned down for reasons *unrelated* to the alleged fraud. Compl. ¶ 99 ("Plaintiff had been offered but rejected an open position in the Diocese of Erie . . . . Plaintiff declined this position after consultation with Fromknecht (then president of her congregation) *because neither believed that the* authoritative, patriarchal, and sexist environment of a *Diocesan Office would be a conducive work environment for Plaintiff*.") (emphasis added). As Plaintiff's own allegations are inconsistent with a finding of detrimental reliance, Plaintiff has failed to state a claim for fraud.

*Greishaw v. Base Mfg.*, Civ. A. No. 06-184 Erie, 2008 WL 509077 (W.D. Pa. Feb, 21, 2008)

(McLaughlin, J.) (dismissing fraud claim for lack of detrimental reliance where plaintiff did not

allege that he turned down other job offers in reliance on defendant's misrepresentation);

*Auerbach v. Kantor-Curley Pediatric Assocs. P.C.*, No. Civ. A. 01-cv-854, 2004 WL 870702

(E.D. Pa. Mar. 22. 2004) (fraud claim failed where plaintiff suffered no lost job opportunities in

reliance on alleged misrepresentation).

      Moreover, Plaintiff has failed to state a fraud claim because she specifically admits that

she discovered the fraud long before any alleged harm occurred.  According to her Complaint,

Plaintiff's injury arose from Gannon's restructuring in 2002.  *See, e.g.*, Compl. ¶¶ 44, 48, 110.

According to her own allegations, however, this alleged injury occurred over two years *after* she

had actual knowledge of defendants' true intentions regarding her employment and two years

*after* she allegedly had entered into a written employment contract with the University.  Compl.

¶¶ 26, 28, 114.

      Under Pennsylvania law, Plaintiff cannot state a fraud claim for damages incurred after

she discovered the fraud.  *See In re Thorne's Estate*, 25 A.2d 811, 816 (Pa. 1942) ("If the

representee knew the truth it is obvious that he was neither deceived nor defrauded and that any

loss he may sustain is not traceable to the representation but is in effect self-inflicted.").  As a

matter of law, once a party learns of the claimed fraud and enters into a new contract, she cannot

later contend that she was damaged by the initial misrepresentation.  Instead, the only damages

that a plaintiff could possibly suffer under those circumstances are contractual damages.  *See Pen

Argyl Land Imp. Co. v. Werner*, 19 A. 417 (Pa. 1890) (per curiam) (affirming lower court, which

held that, after discovering that he had been misled, confronting defendant and renegotiating a

new agreement, plaintiff "no longer had a right of action for . . . deceit.  But he had a right of

action under this [new] agreement").  Plaintiff's fraud claim should be dismissed on the

pleadings because she has failed to allege damages attributable to fraud. *See Sixsmith v. Martsolf*, 196 A.2d 662, 663-64 (Pa. 1964) (affirming dismissal where complaint fatally failed to allege any loss occurring as a result of the alleged misrepresentations).

**D.    PLAINTIFF DOES NOT ALLEGE THAT BISHOP TRAUTMAN MADE ANY FALSE REPRESENTATIONS TO PLAINTIFF.**

Insofar as it concerns Bishop Trautman, Plaintiff's fraudulent misrepresentation claim must be dismissed as a matter of law because she does not contend that the Bishop ever made any representations to her concerning the Chaplain position.  At the most basic level, Pennsylvania law requires a plaintiff to allege that the defendant made a misrepresentation of fact in order to state a valid claim of fraud. *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983) (to state a viable claim for fraud, plaintiff must allege that defendant made a specific false representation of material fact); *see also* Fed. R. Civ. P. 9(b) (requiring plaintiff to allege representation with particularity).  But Plaintiff makes no such allegations against Bishop Trautman here.  Instead, her fraud claim is based entirely on representations that Msgr. Rubino allegedly made. *See* Compl. ¶¶ 17, 101 ("The meeting at which the representations at issue took place occurred . . . in [Msgr. Rubino's] Office," and "only Plaintiff and Msgr. Rubino were present.").  In fact, Plaintiff claims only that, according to Msgr. Rubino, she was appointed with the "advice and consent" of Bishop Trautman, who had allegedly approved her appointment. Compl. ¶ 16-17, 101.  While these few, vague references to Bishop Trautman, at most, imply that he consented to Plaintiff's initial appointment, they do not constitute a specific false representation of fact as required to state a fraud claim. *Cehula v. Janus Distrib., LLC*, Civ. No. 07-113, 2007 WL 3256840, *3-4 (W.D. Pa. Nov. 2, 2007) (dismissing plaintiff's complaint for failure to state a claim of fraud because it did not specifically plead when, where and what the defendant allegedly said).

Accordingly, because Plaintiff's own pleadings show that Bishop Trautman did not make any factual representations to Plaintiff, her fraud claim against the Bishop should be dismissed as a matter of law. *Christidis*, 717 F.2d 99-100 (affirming dismissal of fraudulent misrepresentation claim where complaint failed to specifically identify each element of the claim); *Sun Co., Inc. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369-70 (E.D. Pa. 1996) (dismissing complaint where plaintiff failed to allege defendant made a specific statement).

## E.    PLAINTIFF WAS NOT DAMAGED BY MSGR. RUBINO IN HIS INDIVIDUAL CAPACITY.

Plaintiff has also failed to allege that Msgr. Rubino damaged her in any way. As previously noted, the only alleged injury in Plaintiff's Second Amended Complaint resulted from the removal of Plaintiff from her leadership position in 2002. As alleged in Plaintiff's Complaint, however, Msgr. Rubino resigned from Gannon in 2000 and was no longer even at the University when Plaintiff was allegedly removed. Compl. ¶¶ 5, 16. In fact, Plaintiff claims that the "restructuring" that affected her leadership role occurred two years after Msgr. Rubino resigned, in August 2002, when Garibaldi was President. Compl. ¶ 44. Thus, based on Plaintiff's own allegations, Msgr. Rubino could not have been causally involved in any decisions to demote Plaintiff or to contribute to her alleged economic harm in any way, even if he had intended to cause her harm in 1999 (which has not been alleged). As such, Plaintiff cannot maintain a claim against him. *See Eden Roc Country Club v. Mullhauser*, 204 A.2d 465, 467 (Pa. 1964) (affirming dismissal of deceit claim where, assuming the truth of the factual allegations of the complaint, there was no legal causal connection between the acts of the defendant and the actions that allegedly injured plaintiff).

## F.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DR. GARIBALDI, INDIVIDUALLY, FOR BREACH OF CONTRACT.

Dr. Garibaldi is named, individually, only in Count V of the Second Amended Complaint. There is nothing set forth in that Count, or in any other part of the Second Amended

Complaint that would suggest, let alone demonstrate, the existence of any contractual relationship between Dr. Garibaldi, himself, and Petruska. To the contrary, Petruska's claims against Dr. Garibaldi are framed in the context of the alleged breach of her contractual relationship with the Defendant, Gannon University. Because there is no alleged contract between Dr. Garibaldi and Plaintiff, this claim should be dismissed.

Moreover, Dr. Garibaldi was a disclosed agent of Gannon and therefore cannot be liable for any contract between Plaintiff and Gannon. Dr. Garibaldi was—and remains—President of Gannon University, a fact that was known to Petruska at all times relevant to this action. Second Amended Complaint, ¶ 6. There are no allegations as set forth in the Second Amended Complaint that Dr. Garibaldi ever interacted with Petruska in any other capacity, or that he acted outside of the scope of his office. Accordingly, any and all claims against Dr. Garibaldi must be barred under the principle of "disclosed agency." It is a matter of black-letter law in this Commonwealth that an agent is not liable for acts within the scope of his authority for or on behalf of a disclosed principal. *Montgomery v. Levy*, 117 A.2d 448, 450 (Pa. 1962); *Geyer v. Huntingdon Cty Agr. Ass'n*, 66 A.2d 249, 250-251 (Pa. 1949); *Levy v. Conly*, 17 A.2d 382, 383-384 (Pa. 1941); *Vernon D. Cox & Co., Inc. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979); *In re Lahiri*, 225 B.R. 582, 590 (Bankr. E.D. Pa. 1998).

## G.    PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES SHOULD BE DISMISSED.

Finally, Plaintiff's claim for attorneys' fees should be dismissed. Pennsylvania law is well-settled that "'there can be no recovery for counsel fees from the adverse party to a cause in the absence of express statutory allowance of the same . . .', or clear agreement by the parties, or some other established exception . . . ." *Chatham Commc'ns, Inc. v. Gen. Press Corp.*, 344 A.2d 837, 842 (Pa. 1975) (citations omitted). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). Here, no contractual or statutory basis exists for recovering attorneys' fees

on Plaintiff's common-law fraud or contract claim, nor is there any established exception to the rule that applies in this case.  Accordingly, Plaintiff's claim for attorneys' fees should be dismissed.  *See, e.g.*, *Rollinson v. Clarke-DeMarco*, 83 Pa. D. & C. 4th 467, 475 (Pa. Com. Pl. 2007) (sustaining preliminary objection to claim for attorneys' fees where the party failed to allege that there was an agreement, statute, or recognized exception providing for such fees); *Brickman Group, Ltd. v. CGU Ins. Co.*, No. 0909 July Term 2000, 2001 WL 1807923, *12  (Pa. Com. Pl. Jan. 8, 2001) (striking prayer for attorneys' fees where plaintiff "has not sufficiently set forth any facts that would demonstrate how this action was more than a breach of contract action or how it is entitled to attorneys fees").

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion for Judgment on the Pleadings.


Dated:  July 17, 2008

/s/ Leon F. DeJulius, Jr.
Paul M. Pohl
Pa. Bar No. 21625
Bryan D. Kocher
Pa. Bar No. 56755
Leon F. DeJulius, Jr.
Pa. Bar No. 90383

JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, PA  15219-2502
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959

Counsel for Defendants Bishop Donald W. Trautman and Monsignor David Rubino, in their individual capacities


/s/ Arthur D. Martinucci
Arthur D. Martinucci
Pa. Bar No. 63699

QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.
2222 West Grandview Blvd.
Erie, PA  16506-4508
Telephone:  (814) 833-2222
Facsimile:  (814) 833-6753

Counsel for Defendants Bishop Donald W. Trautman, Monsignor David Rubino, and Dr. Antoine Garibaldi, in their individual capacities.